RICK EASTLICK, APPELLANT, V. LUEDER CONSTRUCTION COMPANY, A DISSOLVED NEBRASKA CORPORATION, ET AL., APPELLEES.

741 N.W.2d 628

Filed November 16, 2007. No. S-06-721.

Michaela Skogerboe and James E. Harris, of Harris Kuhn Law Firm, L.L.P., for appellant.

Patricia McCormack and Eugene L. Hillman, of Hillman, Forman, Nelsen, Childers & McCormack, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Rick Eastlick was employed as a bricklayer for Monona Masonry, Inc. (Monona), which was doing masonry work at a church construction site in Fremont, Nebraska. Eastlick was working on scaffolding when it collapsed, and he sustained serious injuries. The general contractor for the project was Lueder Construction Company (Lueder). Eastlick sued Lueder for damages. The district court concluded that Lueder owed no duty to Eastlick related to the accident, and it granted Lueder's motion for summary judgment. Eastlick appeals.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Papillion Rural Fire Prot. Dist. v. City of Bellevue, ante* p. 214, 739 N.W.2d 162 (2007). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

On October 24, 2000, Eastlick was working on scaffolding at a church construction project. The scaffolding collapsed, and Eastlick fell approximately 20 feet to the ground, sustaining injuries, including a fracture of the right femur that required surgery. Eastlick also developed posttraumatic stress disorder.

The metal scaffolding was described as a "Morgan scaffold." The sections of scaffolding stacked on top of each other, with planks in between to allow workers to walk on the scaffolding. The scaffolding was held together by straight braces and "X" braces. The planks were mechanically raised as brickwork was finished and the work area became higher from the ground.

On the day of Eastlick's accident, two sections of scaffolding were in place, but no planks had been set up. Another bricklayer, Jesse Stout, said he and Eastlick were directed by a Monona employee to change the straight brace at the top of the scaffolding. They climbed to the top of the scaffolding, and Eastlick removed an X brace rather than a straight brace, resulting in a collapse of the scaffolding.

Richard Gegzna, who worked as a bricklayer foreman for Monona at the time of the accident, explained that a Morgan scaffold is a single tower connected together in 9-foot sections with a cable crank. Sections can be added using X braces and straight braces. Eastlick and Stout climbed the scaffolding to change a straight brace that held the scaffolding together because one of the bars was bent. Gegzna's back was turned when the accident occurred, but he saw the two men hit the

ground. He examined the scaffolding later and determined that pins had been removed from the X brace on Eastlick's side of the scaffolding. Gegzna testified that if an X brace and a straight brace were both removed, the scaffolding could fall.

According to Gegzna, Lueder did not recommend the type of scaffolding or provide instructions on setup or dismantling. Lueder did not direct Monona as to the tools to be used, but Lueder had specifications on how the work should be done, and it had a safety program and policy. Gegzna did not recall whether Monona employees participated in Lueder's safety program.

Wayne Schiltz, a field supervisor for Monona at the time of the accident, stated that the Morgan scaffolding owned by Monona was used on the jobsite. Lueder did not deliver or make repairs to the Morgan scaffolding and had nothing to do with how the scaffolding was erected. Schiltz said that Eastlick had experience with scaffolding and usually helped with repairs of scaffolding or replacement of parts.

Schiltz described the X brace as a unit with a pin through the center of it. The straight brace holds the scaffolding together and stabilizes the X brace. It takes three people to safely erect or dismantle the scaffolding. Schiltz said that Eastlick had damaged a brace with a forklift as the scaffolding was brought in and that Schiltz directed Eastlick and Stout to replace the brace. They leaned a section of scaffolding against another section and then removed the bent brace without first replacing it. The scaffolding then fell. Schiltz did not see the accident, but he saw that the scaffolding had collapsed.

Schiltz opined that it was "[u]nbelievable for two men that has [sic] worked for us for many years with the same very equipment and do something so horrendous as that. It's unbelievable." Eastlick and Stout told Schiltz that they had pulled the pins out of the brace. Three pins were missing from the collapsed scaffolding.

Eastlick filed a complaint against Lueder, Monona, and American Family Mutual Insurance Company on October 20, 2004, alleging that Lueder, as the general contractor, had control and supervision over all aspects of the construction project and had a duty to foresee that the masonry work was likely to

create peculiar risks or involve peculiar or inherent dangers. Eastlick alleged that Lueder (1) violated its nondelegable duty to provide a reasonably safe place to work; (2) violated its statutory duties under the requirements of the Occupational Safety and Health Administration (OSHA); (3) violated its nondelegable duties to see that the work performed by the independent contractors involving peculiar risks was done with a requisite degree of care by taking adequate safety precautions and measures; and (4) failed to ensure that the scaffolding was erected, moved, and dismantled under the supervision of or by a competent, qualified person.

Eastlick alleged that as a result of the accident, he was injured and incurred hospital, medical, and related health care expenses. He claimed that he was totally disabled from October 24 through December 4, 2000, resulting in lost wages of $6,945, and that he would continue to sustain lost earnings and loss of earning capacity in the future.

Lueder denied Eastlick's allegations but admitted it was the general contractor for the construction project. Lueder alleged that Eastlick's exclusive remedy was workers' compensation; that Lueder owed no duty of care to Eastlick, who was an employee of a subcontractor; and that the use of scaffolding did not involve a peculiar risk or constitute an ultrahazardous activity.

The district court sustained Lueder's motion for summary judgment and overruled Eastlick's motion for partial summary judgment. The court found that the peculiar risk doctrine did not apply. There was no dispute that Monona owned the scaffolding and that the scaffolding had been erected by Monona employees. The court found that Lueder's duty to Eastlick extended only to provide a reasonably safe place to work and did not include a duty to inspect equipment that was owned, directed, or controlled by Monona. There was no dispute that Monona was cited by OSHA for safety violations and that Lueder was not cited for any OSHA violation. The court concluded that the record did not support an action for negligence against Lueder.

Eastlick's motion to reconsider was overruled, and he timely perfected this appeal.

## ASSIGNMENTS OF ERROR

Eastlick assigns the following errors, summarized and restated: The district court erred (1) in finding that Lueder, as general contractor, owed no duty to Eastlick and that Eastlick had no claim against Lueder for his injuries; (2) in dismissing Eastlick's claim based on the finding that Lueder had no duty to inspect equipment owned, directed, and controlled by its subcontractor (Monona), where Eastlick's claim was based on an unsafe condition and activity on the premises; (3) in finding that the work performed by Eastlick at the time of the accident did not create a peculiar risk of physical harm without the taking of special precautions; (4) in finding that there was no breach of Lueder's duty to Eastlick, which was an issue of fact; and (5) in failing to find that Lueder owed Eastlick a duty to keep the premises in a reasonably safe condition.

## ANALYSIS

Eastlick, who was employed as a bricklayer for Monona, sustained serious injuries when the scaffolding he was standing on collapsed. Eastlick alleged that Lueder's negligence resulted in his injuries. In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *National Am. Ins. Co. v. Constructors Bonding Co.*, 272 Neb. 169, 719 N.W.2d 297 (2006).

The first issue is whether Lueder, the general contractor, owed Eastlick a duty to protect him from the injury that occurred. Related to this issue is whether Lueder maintained control over Eastlick's workplace and whether Lueder breached any of its nondelegable duties to Eastlick by failing to provide a safe place to work, violating a statute or rule of law, or violating its duty of due care if Eastlick's work involved a special risk.

Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Didier v. Ash Grove Cement Co.*, 272 Neb. 28, 718 N.W.2d 484 (2006). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *Id.*

Lueder was the general contractor on the jobsite pursuant to a written construction contract with the owner. The contract provided that Lueder was required to supervise and direct the work at the site; that the contractor was responsible to the owner for acts and omissions of the contractor's employees, subcontractors, and their agents or employees; and that the contractor was responsible for initiating, maintaining, and supervising all safety precautions and programs. The subcontract between Lueder and Monona included a provision that the subcontractor, Monona, agreed to assume the entire responsibility and liability for all damages or injury to all persons arising out of or resulting from the execution of the work provided for in the subcontract.

Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Id.* There are two recognized exceptions to the general rule which may allow the employer of an independent contractor to be held vicariously liable to a third party. "Those two exceptions are where (1) the employer retains control over the contractor's work or (2) the employer has a nondelegable duty to protect another from harm." *Id.* at 34, 718 N.W.2d at 490. Nondelegable duties include (1) the duty of an owner in possession and control of premises to provide a safe place for work by an independent contractor's employee, (2) a duty imposed by statute or rule of law, and (3) the duty of due care when the independent contractor's work involves special risks or dangers. See *id.*

The contract between Lueder and Monona required that Monona assume the entire responsibility and liability for any injury to any person arising out of the work done by Monona. There was no evidence that Lueder had control over the work being done by Eastlick. Although Lueder had control of the jobsite, it did not control Eastlick's work or the tools and scaffolding that he was using.

There is no dispute that the scaffolding was owned, maintained, erected, and dismantled by Monona. It was intended for use by Monona and its employees. Although Lueder had a supervising role, it did not direct the masonry work done by Monona, nor did it have control over the manner in which the

masonry work was done. There was no evidence that Lueder had control over the work performed by Monona.

Eastlick argues that Lueder owed a nondelegable duty to him to keep the premises in a reasonably safe condition. "A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed." *Dellinger v. Omaha Pub. Power Dist.*, 9 Neb. App. 307, 311-12, 611 N.W.2d 132, 137 (2000), citing *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). Liability for breach of a nondelegable duty is an exception to the general rule that one who employs an independent contractor is not liable for the independent contractor's negligence. *Dellinger v. Omaha Pub. Power Dist., supra.*

Lueder has not disputed that it had a nondelegable duty to provide a safe place to work for Monona employees. The record shows that Eastlick was not injured because the workplace was unsafe. Rather, he was injured when he removed a brace on the scaffolding in an incorrect manner. The scaffolding was owned, erected, and maintained by Monona, Eastlick's employer, and not by Lueder, the general contractor. There was no evidence presented to show that Lueder breached any nondelegable duty to provide a safe workplace.

Eastlick also argues that Lueder was negligent by statute or rule of law because OSHA regulations provide that Lueder should have ensured that Eastlick had proper training to work on the scaffolding. He also claims that the court cannot infer that Lueder did not violate an OSHA standard because Lueder was not cited by OSHA.

As the district court noted, there was no dispute in the evidence that the scaffolding was owned and erected by Monona and that Monona was cited for OSHA violations. There was no evidence that Lueder was cited for any OSHA violation. The court stated that Nebraska statutes pertaining to scaffolding place the responsibility for proper erection and dismantling of scaffolding on the company that owns and maintains the scaffolding in use. See Neb. Rev. Stat. §§ 48-425 and 48-428 (Reissue 2004). The Nebraska statutes pertaining to scaffolding safety have been applied by this court to persons who erect,

construct, or supply the scaffolding. See *Hand v. Rorick Constr. Co.*, 190 Neb. 191, 206 N.W.2d 835 (1973). The district court found no support for an action for negligence against Lueder by rule of law or statute, and we agree.

■ Eastlick also argues that the overwhelming weight of the evidence supports a finding that the acts of moving and dismantling scaffolding involve special risks or dangers, which imposed a duty of due care on Lueder. A peculiar risk must involve some special hazard resulting from the nature of the work done, which calls for special precautions. *Dellinger v. Omaha Pub. Power Dist., supra.*

Examples of types of work which this court has previously held to demonstrate peculiar risks include steel construction work (*Parrish v. Omaha Pub. Power Dist., supra*), painting the inside of an underground tank creating highly combustible paint fumes (*Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994)), and steamfitter work near the opening on a floor deck that exposed vertical reinforcing rods (*Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972)).

In *Dellinger v. Omaha Pub. Power Dist.*, 9 Neb. App. 307, 611 N.W.2d 132 (2000), the Nebraska Court of Appeals distinguished cases in which an injury can be traced to an act of negligence, such as the failure to fasten one end of a board on a scaffoldlike structure, from those in which a peculiar risk is associated with the work being done. Although there may have been peculiar risks associated with the steel construction work the employee was doing, the actual risk he faced was the result of a failure to properly secure a piece of equipment.

The case at bar is similar. The injury Eastlick sustained was not the result of merely working on the scaffolding, but was the result of a failure to follow proper procedures. There was no evidence that the acts of erecting, repairing, or dismantling the scaffolding carried with them a peculiar risk, although certain safety precautions were necessary. The record does not show that the district court erred in finding that the peculiar risk doctrine did not apply to the facts of this case. There is no evidence that Lueder breached any nondelegable duty arising as a result of any peculiar risk associated with Eastlick's work on the scaffolding.

Eastlick relies on *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993), in which this court reversed the award of summary judgment granted to the owner and the general contractor. However, in that case, the owner of the construction site specifically retained the right to inspect all work, the right to monitor overall progress of the work, and the right to take over the construction if the general contractor failed to perform the work according to the contract. A licensed professional engineer who worked for the owner was stationed at the site for daily contact with the work. He exerted some supervisory control over the construction. The project manager for Omaha Public Power District was involved in coordinating and supervising the work of the general contractor throughout the construction. This court noted that the district's personnel at the construction site were active participants and not just passive observers.

*Hand v. Rorick Constr. Co.*, 190 Neb. 191, 206 N.W.2d 835 (1973), is more applicable to the case at bar. An employee of a masonry subcontractor sued a general contractor for injuries the employee sustained in a fall from a scaffold. The contract between the owner and the general contractor provided that the contractor would take all necessary precautions for the safety of employees.

This court noted that the instrumentality which caused the injury was not the premises, but, rather, was the equipment owned, controlled, and erected by the subcontractor, who was the employer of the injured worker. The evidence did not establish that the general contractor had any right to control the instrumentalities used by the subcontractor. We held that "the duty of a general contractor to employees of a subcontractor extends only to providing a reasonably safe place to work as distinguished from apparatus, tools, or machinery furnished by the subcontractor for the use of his own employees." *Id.* at 197, 206 N.W.2d at 838.

"[A] general contractor's mere failure to inspect a scaffold owned, erected, and controlled by the subcontractor and furnished by the subcontractor for the use of his own employees does not make the general contractor liable to the subcontractor's employees for injuries caused by defects in the scaffold."

*Id.* at 197, 206 N.W.2d at 838-39. A contractual provision stating that the general contractor would take all necessary precautions for the safety of employees working on the jobsite did not enlarge the common-law duty of the general contractor to a subcontractor's employees such that the general contractor would be required to inspect tools, equipment, and apparatus furnished by the subcontractor for the exclusive use of its own employees. *Id.*

In the present case, the record shows that Eastlick was injured after he and Stout climbed the scaffolding to change a brace. Eastlick removed the brace before its replacement had been fastened, and the scaffolding fell to the ground. Gegzna, a foreman for Monona, Eastlick's employer, testified that Lueder did not recommend the type of scaffolding, provide instructions on its setup or dismantling, or direct Monona as to the tools to be used. Schiltz, a field supervisor for Monona, stated that the scaffolding was owned by Monona. Lueder did not deliver or make repairs to the scaffolding and had no part in its erection. It was Schiltz who directed Eastlick and Stout to repair the scaffolding. Eastlick had experience working with the scaffolding and frequently helped with repairs or replacement. Schiltz found it "unbelievable" that employees with the experience of Eastlick and Stout would attempt to change the brace without first replacing it.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Papillion Rural Fire Prot. Dist. v. City of Bellevue, ante* p. 214, 739 N.W.2d 162 (2007). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

We have reviewed the evidence in a light most favorable to Eastlick and given him the benefit of all reasonable inferences deducible from the evidence. We find that there was no genuine issue of material fact as to whether Lueder owed any nondelegable duty to Eastlick beyond providing a safe place to work.

Eastlick's injuries were not the result of an unsafe premises, but, rather, the result of work completed in a negligent manner. Thus, the evidence supports the district court's finding that Lueder was entitled to summary judgment.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.

McCORMACK, J., not participating.