## VI. CONCLUSION

It is the judgment of this court that respondent be disbarred from the practice of law in the State of Nebraska, effective from the date of her temporary suspension on September 25, 2013. Respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, she shall be subject to punishment for contempt of this court. Respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF DISBARMENT.

MILLER-LERMAN, J., not participating.

———————————

GUADALUPE GAYTAN, SPECIAL ADMINISTRATOR OF THE ESTATE OF JOSE SANCHEZ DOMINGUEZ, DECEASED, APPELLANT, v. WAL-MART ET AL., APPELLEES.

___ N.W.2d ___

Filed September 19, 2014.    No. S-13-039.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Affidavits.** The purpose of Neb. Rev. Stat. § 25-1335 (Reissue 2008) is to provide a safeguard against an improvident or premature grant of summary judgment.

4. **Summary Judgment: Motions for Continuance: Affidavits.** As a prerequisite for a continuance, or additional time or other relief under Neb. Rev. Stat. § 25-1335 (Reissue 2008), a party is required to submit an affidavit stating a reasonable excuse or good cause for the party's inability to oppose a summary judgment motion.

5. ____: ____: ____. A Neb. Rev. Stat. § 25-1335 (Reissue 2008) affidavit that a party submits in support of a continuance need not contain evidence

going to the merits of the case, but must explain why the party is presently unable to offer evidence essential to justify opposition to the motion for summary judgment.

6. **Summary Judgment: Motions for Continuance: Pretrial Procedure.** In ruling on a request for a continuance or additional time in which to respond to a motion for summary judgment, a court may consider the complexity of the lawsuit, the complications encountered in litigation, and the availability of evidence justifying opposition to the motion. The court may also consider whether the party has been dilatory in completing discovery and preparing for trial.

7. **Motions for Continuance: Appeal and Error.** A trial court's grant or denial of a continuance will be reviewed for an abuse of discretion.

8. **Negligence: Proof.** In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

9. **Negligence.** The duty in a negligence case is to conform to the legal standard of reasonable conduct in the light of the apparent risk.

10. ____. The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

11. **Negligence: Liability: Contractors and Subcontractors.** Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or its servants.

12. ____: ____: ____. An employer of an independent contractor can be liable for physical harm caused to another if (1) the employer retains control over the contractor's work, (2) the employer is in possession and control of premises, (3) a statute or rule imposes a specific duty on the employer, or (4) the contractor's work involves special risks or dangers.

13. **Negligence: Liability: Contractors and Subcontractors: Words and Phrases.** A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed.

14. **Negligence: Contractors and Subcontractors.** If an owner of premises retains control over an independent contractor's work, the owner has a duty to use reasonable care in taking measures to prevent injury to those who are working on the premises.

15. ____: ____. When a general contractor retains control over an independent contractor's work, the general contractor has a duty to use reasonable care in taking measures to prevent injuries to workers.

16. **Contractors and Subcontractors: Employer and Employee: Liability.** To impose liability on a property owner or general contractor for injury to an independent contractor's employee based upon the owner's retained control over the work, the owner or general contractor must have (1) supervised the work that caused the injury, (2) actual or constructive knowledge of the danger which ultimately caused the injury, and (3) the opportunity to prevent the injury. While this necessarily means that the control exerted by the owner or general contractor must be substantial, it also necessarily means that the control must directly relate to the work that caused the injury.

17. **Contractors and Subcontractors.** Control over the work sufficient to impose liability on a general contractor or owner must manifest in an ability to dictate the way the work is performed, and not merely include powers such as a general right to start and stop work, inspect progress, or make suggestions which need not be followed.

18. **Contracts: Contractors and Subcontractors.** In examining whether an owner or a general contractor exercises control over the work, both the language of any applicable contract and the actual practice of the parties should be examined.

19. **Negligence: Words and Phrases.** Constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have.

20. **Negligence: Property.** One in possession and control of premises has a duty to exercise reasonable care to keep the premises in a safe condition while the contract is in the course of performance. This duty relates to the physical condition of the premises, not the manner in which the work is done.

21. **Negligence: Employer and Employee.** The duty to provide specified safeguards or precautions for the safety of others that is imposed by a statute or administrative regulation is nondelegable, in that the one upon whom the duty is imposed cannot escape liability by delegating responsibility for the safeguards to another. But the duty arises only if the statute or regulation specifically imposes the obligation on only the employer and at least implicitly prohibits delegation. It is the nature of the regulation itself that determines whether the duties it creates are nondelegable.

22. **Negligence: Liability: Contractors and Subcontractors: Case Disapproved.** The vicarious liability principle as articulated in Restatement (Second) of Torts § 416 (1965) does not apply to personal injury claims by employees of subcontractors against general contractors or owners. To the extent that *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993), and subsequent cases hold to the contrary, they are disapproved.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Ronald J. Palagi and Joseph B. Muller, of Law Offices of Ronald J. Palagi, P.C., L.L.O., for appellant.

Jerald L. Rauterkus and Adam R. White, of Erickson & Sederstrom, P.C., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Stephan, J.

Jose Sanchez Dominguez was killed in an accident at a construction site. At the time of the accident, he was working

for a subcontractor on the roof of a building being constructed for Wal-Mart Stores, Inc. (Wal-Mart). The general contractor on the project was Graham Construction, Inc. (Graham). Guadalupe Gaytan, the special administrator of Dominguez' estate, brought this negligence action against Wal-Mart, Graham, D & BR Building Systems, Inc. (D&BR), and another party not pertinent to this appeal. The district court sustained a motion for summary judgment filed by Wal-Mart and Graham. In this appeal from that order, we affirm the judgment of the district court with respect to Wal-Mart, but reverse, and remand for further proceedings as to Graham.

## I. BACKGROUND

In 2007, Wal-Mart retained Graham to be the general contractor in charge of constructing a new Wal-Mart store in Omaha, Nebraska. In 2008, Graham subcontracted with D&BR to install the steelwork necessary for the building. Dominguez was working for D&BR at the Wal-Mart jobsite.

Part of D&BR's job was to install steel decking sheets on the roof. The sheets were first laid out roughly in place and then permanently aligned and installed. For the permanent installation, D&BR accessed a small number of the sheets through the use of a controlled decking zone (CDZ). Only trained and qualified steelworkers worked inside the CDZ. Any person who was on the roof but outside the CDZ was required to wear personal protection equipment (PPE), such as a harness with an attached rope or cable, at all times.

On January 27, 2008, at approximately 11:45 a.m., Dominguez and another D&BR worker were on the roof. Neither was wearing PPE. Dominguez and his coworker walked across a decking sheet outside of the CDZ, and it gave away, causing them to fall approximately 25 feet. Dominguez was killed as a result of the fall. A subsequent investigation showed the decking sheet had originally been secured with two temporary screws, but that someone had removed the screws or cut them off, so the sheet was actually unsecured. Dominguez' unused PPE was discovered near the fall area.

Gaytan, as special administrator of Dominguez' estate, brought this negligence action against Wal-Mart and Graham.

Walmart and Graham moved for summary judgment. After conducting an evidentiary hearing, the district court sustained their motion. After two appeals from this order were dismissed by the Nebraska Court of Appeals for lack of jurisdiction, the district court entered an order disposing of all pending motions and claims. Gaytan filed a timely appeal from this order, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## II. ASSIGNMENTS OF ERROR

Gaytan assigns that the district court erred in (1) concluding as a matter of law that neither Wal-Mart nor Graham retained control over the work being done by D&BR, (2) concluding as a matter of law that neither Wal-Mart nor Graham retained control over the premises, (3) concluding as a matter of law that Graham did not have a nondelegable duty imposed upon it by statute or rule, (4) concluding as a matter of law that the work being done by Dominguez did not present a peculiar risk of harm, (5) making inaccurate factual findings and finding certain facts were uncontroverted, and (6) ruling on the motion for summary judgment before discovery was completed.

## III. STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013); *U.S. Bank Nat. Assn. v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012).

party the benefit of all reasonable inferences deducible from the evidence.[3]

## IV. ANALYSIS

### 1. TIMELINESS OF RULING ON SUMMARY JUDGMENT MOTION

At the hearing on the motion for summary judgment, Gaytan orally informed the court that entry of summary judgment was inappropriate because discovery in the case had not been completed. The district court noted that Gaytan's position was "akin to a motion to continue until the completeness of discovery."[4] In response, Wal-Mart and Graham argued that the case had been pending for some time; that Gaytan had had a similar previous case against Graham pending for over 1 year and then dismissed it; and that in the 60 days since the motion for summary judgment was filed, Gaytan had made no request for depositions or discovery and no formal request for a continuance.

As part of her evidence at the summary judgment hearing, Gaytan submitted an affidavit from her attorney, offered pursuant to § 25-1335. The affidavit identified a number of attached documents and stated in part that the attorney had to date taken no depositions and was having trouble locating employees of D&BR because it was a Texas company no longer in business. The attorney also averred that he had "not yet reviewed" "numerous" documents referenced by the discovery responses of Wal-Mart and Gaytan.

The district court rejected Gaytan's argument that summary judgment was premature because she had not had an adequate opportunity for discovery. The court noted that Gaytan had originally filed suit against Graham based on the same accident on December 8, 2008, and had then voluntarily dismissed that suit approximately 1 year later, after some discovery had occurred. The court further noted that the deadline for completion of fact discovery in the instant case was July 1, 2011.

---

[3] *RSUI Indemnity Co. v. Bacon*, 282 Neb. 436, 810 N.W.2d 666 (2011).

[4] See Neb. Rev. Stat. § 25-1335 (Reissue 2008).

Although the hearing on the motion for summary judgment was held on April 26, the court did not issue its order on the motion until July 15. According to the district court, it waited for the fact discovery deadline to pass in order to give Gaytan an opportunity to alert the court to any later-discovered facts which would have impacted the summary judgment. The court also noted that although expert witness discovery had not been completed, any information learned from that process would not have been relevant to its disposition of the summary judgment motion.

After the district court entered summary judgment in favor of Wal-Mart and Graham, Gaytan filed a motion to alter or amend. This motion asserted, inter alia, that summary judgment was inappropriate when discovery had not been completed. Wal-Mart and Graham objected to the motion and argued that Gaytan could have filed a motion seeking to continue the summary judgment hearing but did not do so. After a hearing, the district court overruled the motion to alter or amend.

[3-7] In this appeal, Gaytan contends the district court abused its discretion in entering summary judgment when discovery had not been completed. This situation is governed by statute in Nebraska. According to § 25-1335:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The purpose of this statute is to provide a safeguard against an improvident or premature grant of summary judgment.[5] As a prerequisite for a continuance, or additional time or other relief, a party is required to submit an affidavit stating a reasonable excuse or good cause for the party's inability to

---

[5] *Dresser v. Union Pacific. RR. Co.*, 282 Neb. 537, 809 N.W.2d 713 (2011).

oppose a summary judgment motion.[6] The affidavit need not contain evidence going to the merits of the case, but must explain why the party is presently unable to offer evidence essential to justify opposition to the motion for summary judgment.[7] In ruling on a request for a continuance or additional time in which to respond to a motion for summary judgment, a court may consider the complexity of the lawsuit, the complications encountered in litigation, and the availability of evidence justifying opposition to the motion.[8] The court may also consider whether the party has been dilatory in completing discovery and preparing for trial.[9] A trial court's grant or denial of a continuance will be reviewed for an abuse of discretion.[10]

Although Gaytan did not file a formal motion to continue, the affidavit filed by her attorney adequately raised issues encompassed by § 25-1335. The issue of whether the summary judgment proceedings should be continued was before the district court, and that court held it was proper to proceed. Considering the history of the case, the deadline for fact discovery, the factual nature of the issues before the court, and the arguments for continuance advanced by Gaytan's attorney in his affidavit, we conclude the district court did not abuse its discretion in entering the summary judgment order.

## 2. Merits of Summary Judgment

[8-10] In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.[11] The duty in a negligence case is to conform to the legal standard of reasonable conduct in the light of the apparent

---

[6] See, *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989); *Holt Cty. Sch. Dist. No. 0025 v. Dixon*, 8 Neb. App. 390, 594 N.W.2d 659 (1999).

[7] *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988).

[8] *DeCamp, supra* note 6.

[9] See *id.*

[10] *Wachtel, supra* note 7.

[11] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

risk.[12] The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[13]

[11] Here, Wal-Mart was the owner of the construction project and Graham was its general contractor. D&BR, as a subcontractor hired by Graham, was an independent contractor as to Wal-Mart and Graham.[14] Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or its servants.[15] This is the general rule, because an employer of an independent contractor generally has no control over the manner in which the work is to be done by the contractor, so the contractor, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk and bearing and distributing it.[16]

[12,13] Our case law has recognized four exceptions to the general rule.[17] Specifically, an employer of an independent contractor can be liable for physical harm caused to another if (1) the employer retains control over the contractor's work, (2) the employer is in possession and control of premises, (3) a statute or rule imposes a specific duty on the employer, or (4) the contractor's work involves special risks or dangers.[18] We often refer to the latter three exceptions as involving "nondelegable" duties.[19] A nondelegable duty means that an

---

[12] *Id.*

[13] *Id.*

[14] See, generally, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993).

[15] *Didier v. Ash Grove Cement Co.*, 272 Neb. 28, 718 N.W.2d 484 (2006); *Parrish, supra* note 14.

[16] See Restatement (Second) of Torts § 409, comment *b*. (1965).

[17] See, *Eastlick v. Lueder Constr. Co.*, 274 Neb. 467, 741 N.W.2d 628 (2007); *Didier, supra* note 15; *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997); *Parrish, supra* note 14. See, also, *Dellinger v. Omaha Pub. Power Dist.*, 9 Neb. App. 307, 611 N.W.2d 132 (2000).

[18] *Id.*

[19] *Id.*

employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed.[20] Gaytan argues that all four exceptions are applicable in this case.

### (a) Control Over Work

[14] Gaytan assigns and argues that both Wal-Mart and Graham retained control over the work and thus can be liable to Dominguez. We have held that if an owner of premises retains control over an independent contractor's work, the owner has a duty to use reasonable care in taking measures to prevent injury to those who are working on the premises.[21] We have also held that to fall within this exception to the general rule of nonliability, the owner's involvement in overseeing the construction process must be substantial.[22]

[15] We have recognized that when a general contractor retains control over an independent contractor's work, the general contractor has a duty to use reasonable care in taking measures to prevent injuries to workers.[23] We have expressly stated, however, that in order to impose liability on a general contractor for injury to a subcontractor's employee, the general contractor must have (1) supervised the work that caused the injury to the employee, (2) actual or constructive knowledge of the danger which ultimately caused the injury, and (3) the opportunity to prevent the injury.[24]

[16,17] The control of the work exception is based on the premise that the entity that controls the work should be responsible for ensuring it is done safely. Although we have not specifically addressed the issue in prior cases, we see no reason why the exception as applied to owners and general contractors should differ, and we note that the Restatements

---

[20] *Eastlick, supra* note 17; *Dellinger, supra* note 17.

[21] *Parrish, supra* note 14.

[22] See *id*. See, also, *Dellinger, supra* note 17.

[23] See, *Eastlick, supra* note 17; *Whalen, supra* note 17; *Parrish, supra* note 14.

[24] *Parrish, supra* note 14.

of Torts[25] do not treat owners differently than general contractors. Thus, we now clarify our case law and hold that it is not enough that an owner's involvement in the work be "substantial" in order to subject it to liability for injury to the employee of an independent contractor. Rather, the same rule applies to owners as applies to general contractors: to impose liability on an owner for injury to an independent contractor's employee based upon the owner's retained control over the work, the owner must have (1) supervised the work that caused the injury, (2) actual or constructive knowledge of the danger which ultimately caused the injury, and (3) the opportunity to prevent the injury. While this necessarily means that the control exerted by the owner must be substantial, it also necessarily means that the control must directly relate to the work that caused the injury. Further, control over the work by the general contractor or the owner must manifest in an ability to dictate the way the work is performed, and not merely include powers such as a general right to start and stop work, inspect progress, or make suggestions which need not be followed.[26]

### (i) Wal-Mart

The district court found the evidence established as a matter of law that Wal-Mart did not retain substantial control over D&BR's work. We agree, and further conclude as a matter of law that Wal-Mart did not supervise or control the work which caused Dominguez' injury and thus cannot be held liable on a theory that it retained control over the work.

[18] In examining whether an owner or a general contractor exercises control over the work, both the language of any applicable contract and the actual practice of the parties should be examined.[27] Here, there is no contract between Wal-Mart and D&BR. There is a contract between Wal-Mart

---

[25] See, generally, Restatement (Second), *supra* note 16, § 414; Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 56 (2012).

[26] *Eastlick, supra* note 17. See Restatement (Second), *supra* note 16, § 414, comment *c*.

[27] See, *Whalen, supra* note 17; *Parrish, supra* note 14.

and Graham, however. And that contract specifically states that Wal-Mart has no right to exercise control over Graham, Graham's employees, or Graham's agents. There is no evidence that any Wal-Mart representative actually exercised any control over the construction site. All of this evidence demonstrates that Wal-Mart did not supervise any work at the jobsite, let alone the work performed by D&BR that caused the injury to Dominguez.

Gaytan generally acknowledges that there is no evidence of actual control over D&BR's work by Wal-Mart. But she contends that provisions in the Wal-Mart/Graham contract create a genuine issue of material fact as to whether Wal-Mart exercised the requisite control over D&BR's work to expose it to liability. She relies particularly on the contract's reference to an "Owner Construction Manager" who was to be Wal-Mart's authorized representative on the jobsite. She also contends that the contract between Wal-Mart and Graham provides that all work shall comply with it; that all work shall comply with applicable statutes, regulations, codes, and standards; and that Wal-Mart retained the right to enforce the terms and conditions of the contract.

Even assuming Wal-Mart had an authorized representative on the jobsite, on this record, there is no reasonable inference that such representative controlled the roofing work performed by D&BR. And the contractual provisions relied upon by Gaytan demonstrate no more than a general power to stop and start work. None of them, especially when read in light of the more explicit provisions of the contract, create a genuine issue of material fact as to whether Wal-Mart exercised control over the work which resulted in the injury to Dominguez. The district court correctly held that Wal-Mart as a matter of law did not retain control over the work being performed by D&BR and therefore cannot be liable to Dominguez under the control of the work exception.

### (ii) Graham

Gaytan also asserts that Graham can be liable because it retained control of the work being performed by D&BR. The

district court concluded that Graham did not retain control of the work because it only generally supervised the work being done by D&BR and neither directed nor controlled the manner in which that work was done. The court particularly relied on the fact that Graham employees were not allowed on the roof and had no experience or training in the methods of steel erection.

In examining whether there is a genuine issue of material fact on this theory of liability, we examine both the language of the applicable contract and the actual control exerted by Graham.[28] In doing so, we are mindful that the "work that caused the injury to the employee"[29] in the context of this case includes two factual elements: (1) the use of safety equipment by workers on the roof and (2) the manner in which the decking was secured to the roof. We examine each of these in turn.

### a. Use of Safety Equipment

#### i. Supervision of Safety Equipment Usage

According to the subcontract between Graham and D&BR, Graham had the general right to supervise D&BR's work and require D&BR to resolve safety issues. In addition, D&BR was required to comply with all applicable federal, state, and local safety regulations, including Graham's own safety programs and rules.

The record shows that after the accident, the Occupational Safety and Health Administration (OSHA) penalized Graham because the CDZ had been improperly designated with cones meant to be used as a warning line instead of using a guardrail. In doing so, OSHA noted that even though Graham had no employees of its own exposed to the roofing hazard, it was "the controlling employer for the site, and ha[d] explicit control over the overall safety and health of the site." The record also

---

[28] See *id*.

[29] See *Parrish, supra* note 14, 242 Neb. at 798, 496 N.W.2d at 912.

shows that Graham had supervisory personnel on the jobsite and that after the accident, Graham both held a meeting with D&BR about roof safety and warned a D&BR foreman that a D&BR worker was seen not using PPE while on the roof. The record further shows that prior to the accident, Graham monitored whether D&BR employees were wearing PPE while on the roof and developed a fall protection plan for D&BR. In addition, Graham orientated Dominguez, and the orientation checklist notes he was instructed by Graham about safe work practices.

There is thus evidence in the record that the contract authorized Graham to monitor and control the use of safety equipment by D&BR workers on the roof and that it actually did so. It is undisputed that Dominguez was not wearing his PPE when he fell. A finder of fact could reasonably infer from the evidence that Graham's control over the use of safety equipment on the roof directly related to the work which caused the injury to Dominguez. A genuine issue of material fact thus exists on this subissue.

## ii. Knowledge of PPE Usage

[19] As noted, even if Graham controlled the work which caused Dominguez' injury, it can be liable only if it had actual or constructive knowledge of the danger which ultimately caused the injury and the opportunity to prevent the injury.[30] In *Parrish*, we found the general contractor had the requisite knowledge because it was aware that no safety net or adequate substitute was in place below the area where a steelworker's fall occurred. Here, there is no evidence that Graham had actual knowledge prior to the accident that Dominguez or any other D&BR worker was working without his PPE. Thus, the question is whether there is any evidence to support an inference that Graham had constructive knowledge that D&BR workers were not using PPE. Constructive knowledge

---

[30] See *Parrish, supra* note 14.

is generally defined as "[k]nowledge that one using reasonable care or diligence should have . . . ."[31]

The record reflects that Graham monitored D&BR employees on January 9, 10, 19, and 22, 2008, to determine whether they were properly wearing their PPE. This evidence supports an inference that despite the fact that they did not have access to the roof, Graham employees were able to observe whether or not D&BR workers on the roof were using PPE as required. According to Graham's evidence, on each of these occasions, all D&BR employees were complying with the PPE requirements. But there is also evidence that after Dominguez fell, three unused sets of PPE were found on the roof, which suggests the failure to use PPE was so widespread that Graham should have known of it. On this record, there is a genuine issue of material fact as to whether Graham had constructive knowledge that D&BR employees were not using PPE prior to the accident.

### iii. Opportunity to Prevent Injury

As noted, Graham had the contractual authority to require D&BR to comply with safety requirements, which reasonably includes the proper use of PPE. Thus, Graham had the ability to require D&BR employees to wear PPE while on the roof and the opportunity to prevent the injury to Dominguez to the extent it was caused by his failure to use his PPE.

### iv. Conclusion

Construing the evidence in a light most favorable to Gaytan, as our standard of review requires, there are genuine issues of material fact with respect to Gaytan's claim against Graham on the theory that it retained control over the safety practices on the jobsite, and specifically the use of PPE by D&BR workers on the roof of the building. The district court erred in concluding that Graham cannot, as a matter of law, be liable to Dominguez under the control of the work exception.

---

[31] Black's Law Dictionary 1004 (10th ed. 2014).

### b. Improper Installation
### of Decking

The district court found, as a matter of law, that Graham did not exert sufficient control over the manner in which the decking was installed to be liable to Dominguez. Again, we look at the relevant contract and the actual conduct in assessing whether there is a genuine issue of material fact in this regard.[32]

Nothing in the subcontract gives Graham the authority to dictate the manner in which D&BR installed the roof decking, and the record shows that Graham employees did not do so. To the contrary, the evidence in the record is that Graham employees were not allowed to be on the roof at all.

Gaytan argues that even if Graham could not go on the roof directly to inspect how the sheeting was installed, it could have inspected it via other means. But she offers no argument or evidence as to why Graham should have inspected it, in that it had no contractual or other obligation to control the manner in which D&BR performed its actual work. And the relevant test is whether the general contractor actually exerted control over the methodology of the subcontractor's work.[33]

In *Eastlick v. Lueder Constr. Co.*,[34] a mason employed by a subcontractor was injured when he fell 20 feet to the ground after the scaffolding he was on collapsed. We found the evidence showed that the general contractor had overall control of and generally supervised the jobsite. However, there was no evidence that the general contractor owned, maintained, erected, or dismantled the scaffolding. We reasoned that overall control of the jobsite was not enough, and emphasized that the general contractor did not direct the work done by the subcontractor or have control over the manner in which the subcontractor's work was done.

Here, the actual control issue is very similar to *Eastlick*. Graham did not dictate or control the actual methods by which

---

[32] See, *Whalen, supra* note 17; *Parrish, supra* note 14.

[33] *Eastlick, supra* note 17; *Parrish, supra* note 14.

[34] *Eastlick, supra* note 17.

D&BR installed the roof decking. We conclude the district court correctly determined, as a matter of law, that Graham did not oversee or supervise the manner in which the roof decking was installed and that thus, it cannot as a matter of law be liable for injuries caused to Dominguez by the improper installation of the roof decking on the theory that it controlled the work.

### (b) Control of Premises/ Safe Place to Work

[20] Our jurisprudence has recognized that one in possession and control of premises has a duty to provide a safe place to work for a contractor's employee.[35] In earlier cases, we sometimes comingled this exception with the control of the work exception.[36] In our more recent cases, we have clarified that this exception is separate and distinct from the control of the work exception.[37] Specifically, the safe place to work exception relates to the physical condition of the premises, not the manner in which the work is done.[38]

### (i) Wal-Mart

The district court, citing *Parrish*, reasoned that because Wal-Mart did not retain control of the work, Wal-Mart did not as a matter of law maintain possession and control of the premises so as to have a duty to provide a safe place to work for Dominguez. Gaytan does not directly challenge this rationale, but it is incorrect. In *Parrish*, we found that the owner retained sufficient control of the work so as to be liable for injuries to a subcontractor's employee. We then stated that because the owner retained control of the work, it also had the nondelegable duty to provide a safe place to work. It was this rationale to which the district court in this case referred.

---

[35] *Id*.; *Didier, supra* note 15; *Parrish, supra* note 14.

[36] *Whalen, supra* note 17; *Parrish, supra* note 14. See, also, *Dellinger, supra* note 17.

[37] *Eastlick, supra* note 17; *Didier, supra* note 15.

[38] *Eastlick, supra* note 17.

But the syllogism does not work the opposite way. That is, the fact that the owner does not retain sufficient control of the work so as to become liable for injuries to employees of an independent contractor does not mean that the owner is relieved of its nondelegable duty to provide a safe place to work for employees of independent contractors. We explained in *Didier* v. *Ash Grove Cement Co*.[39] that the duty imposed on an owner derived from the owner's control of the work is distinguishable from the nondelegable duty derived from the owner's ownership and control of the workplace premises. Thus, the mere fact that the owner did not retain sufficient control of the work so as to have a legal duty of care does not mean that the owner has no duty to provide a safe place to work arising from its ownership and control of the premises.[40]

Nevertheless, we agree with the conclusion reached by the district court. An owner has a duty to keep the premises safe and to provide a safe place to work only when the owner maintains possession and control of the premises.[41] Nothing in the record before us supports an inference that Wal-Mart remained in possession or control of the premises during the construction. Thus, as a matter of law, it had no duty to maintain the premises in a safe condition for Dominguez.

### (ii) Graham

The district court did not analyze whether Graham breached a nondelegable duty to provide a safe place to work. Gaytan contends that this was error. She argues that some entity must be in possession and control of the premises and that if Wal-Mart was not, then surely Graham was. As such, she asserts that Graham had a duty to provide a safe place to work.

We agree that Graham had such a duty. The record fully supports that Graham, as a matter of law, was the entity in possession and control of the premises. But it is also clear on this record that Dominguez' injury as a matter of law was

---

[39] *Didier, supra* note 15.

[40] *Id*.

[41] See, generally, Restatement (Second), *supra* note 16, § 422, comment *c*.

not proximately caused by any breach of this duty. The duty owed by one in possession and control to an employee of a subcontractor is "to exercise reasonable care to keep the premises in a safe condition while the contract is in the course of performance."[42] The possessor can be liable only when the employee is injured because the workplace premises were not safe.[43]

Here, Dominguez was not injured because there was something unsafe about the premises he was working on. Instead, he was injured due to specific actions or inactions involved in the construction process. Thus, any breach of Graham's duty to provide a safe place to work did not cause the accident and his injuries. There is no genuine issue of material fact with respect to this allegation of negligence.

### (c) Duty Imposed by Statute or Rule

The district court determined that the "record contains no evidence, nor does [Gaytan] assert the existence of, any statutes or rules of law that imposed a duty upon [Wal-Mart or Graham]. Therefore, the Court does not find a duty based upon this theory." Gaytan argues that this finding is incorrect as to Graham.

Our case law in this area is not well developed. In both *Didier* and *Eastlick*, we recognized this exception to the general rule of nonliability, but concluded it did not apply because there was no evidence that any statute, rule, or regulation was violated. Here, the record shows that a regulation was violated. Specifically, Graham was cited by OSHA for violating 29 C.F.R. § 1926.760(a)(1) (2007), which requires that each employee working in steel erection on a surface higher than 15 feet be protected from fall hazards. The OSHA citation states that employees "were not regularly protected from falls" by Graham. The attached inspection documents show that

---

[42] *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 191, 202 N.W.2d 157, 163 (1972). See, also, *Eastlick, supra* note 17.

[43] *Eastlick, supra* note 17.

Graham was cited by OSHA because the CDZ was marked with cones instead of a guardrail. The record further shows that D&BR, but not Graham, was cited by OSHA for how the metal decking was secured.

[21] The duty to provide specified safeguards or precautions for the safety of others that is imposed by a statute or administrative regulation is nondelegable, in that the one upon whom the duty is imposed cannot escape liability by delegating responsibility for the safeguards to another.[44] But the duty arises only if the statute or regulation specifically imposes the obligation on only the employer and at least implicitly prohibits delegation.[45] It is the nature of the regulation itself that determines whether the duties it creates are nondelegable.[46]

It is clear from the language of § 1926.760 and the record that no regulation imposed a nondelegable duty on Graham as to how the metal decking on the roof was to be secured. At most, § 1926.760 relates to Graham's duty to provide for worker safety on the roof through the use of safety equipment, a duty we have already recognized may arise via Graham's control of the safety aspects of the roof work. We acknowledge that 29 C.F.R. § 1926 (2007) does impose certain specific duties on a general contractor when it controls the project.[47] But these duties do not include those articulated in § 1926.760.[48] While violation of § 1926.760 may be evidence of Graham's negligence, nothing in its language or any other part of § 1926 provides that responsibility for worker safety and use of safety equipment always rests with the general contractor and cannot be delegated. We conclude that as a matter of law, no statute or regulation imposed a nondelegable duty on Graham.

---

[44] Restatement (Second), *supra* note 16, § 424, comment *a*.

[45] Restatement (Third), *supra* note 25, § 63, comment *d*.

[46] See *Padilla v. Pomona College*, 166 Cal. App. 4th 661, 82 Cal. Rptr. 3d 869 (2008).

[47] See 29 C.F.R. § 1926.750(c) (2007).

[48] *Id*.

(d) Special or Peculiar Risks

Gaytan argues that the district court erred in determining that neither Wal-Mart nor Graham had a nondelegable duty arising from the "peculiar risk" associated with steel construction. She relies on *Parrish*,[49] in which we stated:

> As expressed in Restatement (Second) of Torts § 416 (1965), if a general contractor hires an independent contractor to perform work which the general contractor "should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken," the general contractor may be liable for physical harm caused to employees of the subcontractor if the general contractor fails to exercise reasonable care to take such precautions, even though the general contractor has provided, in the contract or otherwise, that the subcontractor be responsible for such precautions.

We further noted a "peculiar risk" was distinguishable from "'the common risks to which persons in general are commonly subjected by ordinary forms of negligence which are usual in the community'" and must involve "'some special hazard resulting from the nature of the work done, which calls for special precautions.'"[50] We concluded that because "steel construction work involves risks which an average person does not ordinarily encounter on a day-to-day basis," it involved a "'peculiar risk'" within the meaning of § 416.[51]

But contrary to our statement in *Parrish*, § 416 makes no mention of liability "for physical harm caused to employees of the subcontractor." Instead, it speaks generally of a "peculiar risk of physical harm *to others*."[52] The illustrations included in the comments to § 416 refer to injuries sustained by persons who had no involvement in the construction

---

[49] *Parrish*, *supra* note 14, 242 Neb. at 799-800, 496 N.W.2d at 913.

[50] *Id*. at 800, 496 N.W.2d at 913, quoting Restatement (Second), *supra* note 16, § 416, comment *d*.

[51] *Parrish*, *supra* note 14, 242 Neb. at 800, 496 N.W.2d at 913.

[52] Restatement (Second) of Torts, *supra* note 16, § 416 (emphasis supplied).

project, such as a pedestrian who falls into an unguarded excavation, the owner of adjoining property damaged by the collapse of an inadequately shored party wall, and a motorist who collides with an unilluminated gravel pile left in the street by a cement contractor.[53] Although a tentative draft of § 416[54] included a "Special Note" stating that the rule would not apply to employees of independent contractors covered by workers compensation, the final version was silent on this issue.[55]

As noted by the authors of the Restatement (Second) of Torts, the liability principles stated in §§ 416 to 429 are rules of vicarious liability which arise "in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor."[56] A majority of state courts have held that these vicarious liability rules do not apply to claims by injured employees of a subcontractor against a property owner or general contractor.[57] A minority of jurisdictions apply vicarious liability principles relating to peculiar risk to claims of a subcontractor's employee.[58]

---

[53] *Id.*, comments *c.* and *e.*

[54] Restatement (Second) of Torts § 416 (Tentative Draft No. 7, 1962, ch. 15, p. 17-18).

[55] See, *Privette v. Superior Court (Contreras)*, 5 Cal. 4th 689, 854 P.2d 721, 21 Cal. Rptr. 2d 72 (1993); *Wagner v. Continental Cas. Co.*, 143 Wis. 2d 379, 421 N.W.2d 835 (1988).

[56] Restatement (Second), *supra* note 16, Introductory Note for § 416 at 394.

[57] See, e.g., *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445 (N.D. 1994); *Privette, supra* note 55; *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384 (Mo. 1991); *Wagner, supra* note 55; *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890 (Wyo. 1986); *Vertentes v. Barletta Co.*, 392 Mass. 165, 466 N.E.2d 500 (1984); *Sierra Pac. Power Co. v. Rinehart*, 99 Nev. 557, 665 P.2d 270 (1983); *Conover v. Northern States Power Co.*, 313 N.W.2d 397 (Minn. 1981); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash. 2d 274, 635 P.2d 426 (1981); *State v. Morris*, 555 P.2d 1216 (Alaska 1976).

[58] See, *Lindler v. District of Columbia*, 502 F.2d 495 (D.C. Cir. 1974); *Lorah v. Luppold Roofing Co., Inc.*, 424 Pa. Super. 439, 622 A.2d 1383 (1993); *Makaneole v. Gampon*, 70 Haw. 501, 777 P.2d 1183 (1989); *Elliott v. Public Serv. Co. of N.H.*, 128 N.H. 676, 517 A.2d 1185 (1986).

The courts adopting the majority view cite various reasons for not applying the principle embodied in § 416 of the Restatement (Second) to claims by injured employees of subcontractors, but most of the rationale stems from the fact that a subcontractor's employees are generally covered by workers' compensation laws. Some courts note that the policy concern underlying § 416, which is to provide a remedy to persons injured as a result of a peculiar risk at a construction site, is already met in the case of a subcontractor's employee covered by workers' compensation.[59] These courts note that the employer of the subcontractor has indirectly funded this remedy because workers' compensation premiums are necessarily included in the contract price.[60] Some courts reason that under agency principles, the subcontractor's release from tort liability to an injured employee by operation of workers' compensation laws operates to release the party which employed the subcontractor.[61] And as the California Supreme Court noted in overruling its prior cases holding § 416 applicable to claims of subcontractor's employees, "to impose vicarious liability for tort damages on a person who hires an independent contractor for specialized work would penalize those individuals who hire experts to perform dangerous work rather than assigning such activity to their own inexperienced employees."[62]

Our own case law in this area is somewhat ambiguous. We have never specifically disapproved of the language in *Parrish* which applied the vicarious liability principle of § 416 to the claim of a subcontractor's employee against the general contractor. In *Whalen v. U S West Communications*,[63]

---

[59] *Fleck, supra* note 57; *Privette, supra* note 55; *Zueck, supra* note 57; *Wagner, supra* note 55; *Jones, supra* note 57.

[60] *Id.*

[61] *Fleck, supra* note 57; *Wagner, supra* note 55; *Jones, supra* note 57; *Tauscher, supra* note 57.

[62] *Privette, supra* note 55, 5 Cal. 4th at 700, 854 P.2d at 729, 21 Cal. Rptr. 2d at 79.

[63] *Whalen, supra* note 17.

and *Ray v. Argos Corp.*,[64] we cited the language in *Parrish* but concluded that the injury to a subcontractor's employee did not result from a peculiar risk. The Nebraska Court of Appeals took the same approach in *Dellinger v. Omaha Pub. Power Dist.*[65] But in *Anderson v. Nashua Corp.*,[66] we held that a property owner could not be vicariously liable for injuries sustained by its independent contractor's employee resulting from inherently dangerous work because under principles of agency, the independent contractor's immunity from tort liability by operation of Nebraska's workers' compensation law necessarily precluded any liability on the part of the owner.[67] In *Downey v. Western Comm. College Area*,[68] we disapproved other aspects of the holding in *Anderson* but re-affirmed the principle that "a possessor of property is not liable for injury to an independent contractor's employee caused by a dangerous condition that arose out of the contractor's work, as distinguished from a condition of the property or a structure on the property."

The Restatement (Third) of Torts provides some clarity in this area. Section 57 provides: "Except as stated in §§ 58-65, an actor who hires an independent contractor is not subject to vicarious liability for physical harm caused by the tortious conduct of the contractor."[69] Section 59, which replaced Restatement (Second) of Torts § 416, provides:

> An actor who hires an independent contractor for an activity that the actor knows or should know poses a peculiar risk is subject to vicarious liability for physical

---

[64] *Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246 (2000).

[65] *Dellinger, supra* note 17.

[66] *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994), *disapproved on other grounds, Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

[67] See, also, *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), *overruled on other grounds, Hynes v. Hogan*, 251 Neb. 404, 558 N.W.2d 35 (1997).

[68] *Downey, supra* note 66, 282 Neb. at 979, 808 N.W.2d at 848.

[69] Restatement (Third), *supra* note 25, § 57 at 400.

harm when the independent contractor is negligent as to the peculiar risk and the negligence is a factual cause of any such harm within the scope of liability.[70]

But unlike the Second Restatement, the Third Restatement specifically states: "The hirer of an independent contractor is not subject to liability to an employee of the independent contractor under any of the vicarious-liability avenues in this Chapter."[71] As the authors explain, the "central reasons for this conclusion stem from the design of workers' compensation."[72] The authors explain:

> Under the exclusive-remedy provisions of workers' compensation, employers are immune from negligence claims by injured employees. This exclusivity provision bars a negligence claim by an employee against the employer even when the employer is an independent contractor hired by another. Because the hirer of the independent contractor is not the employer of the injured employee, an exclusivity provision does not, by itself, expressly bar a claim against the hirer by the injured employee of the independent contractor. Yet the exclusivity of workers' compensation undermines the usual predicate for vicarious liability—the underlying negligence of the person whose negligence is attributed to the vicariously liable defendant. A claim against the hirer would seek to attribute liability, under a vicarious-liability theory, even though the initial or primary liability claim is barred.[73]

This rationale is consistent with our holdings in *Anderson* and *Downey*, but inconsistent with our application of the "peculiar risk" principle derived from § 416 of the Restatement (Second) to the claim of the subcontractor's employee in *Parrish*.

[22] We need not decide in this case whether to adopt the principles of the Restatement (Third) of Torts with respect to the vicarious liability principle relating to peculiar risk.

---

[70] *Id.*, § 59 at 417.

[71] *Id.*, § 57, comment *d.* at 403.

[72] *Id.*

[73] *Id.* at 403-04.

Instead, we join the majority of jurisdictions which hold that the principle as articulated in § 416 of the Restatement (Second) of Torts does not apply to personal injury claims by employees of subcontractors against general contractors or owners. To the extent that *Parrish* and subsequent cases hold to the contrary, they are disapproved. Although our reasoning differs from that of the district court, we agree with its conclusion that as a matter of law, the peculiar risk exception affords no legal basis for Gaytan's claims against either Wal-Mart or Graham.

#### (e) Facts Identified by District Court

For completeness, we note that Gaytan also assigns that the district court erred "because its decision was based on inaccurate facts, and facts that were controverted." We have considered this assignment of error in our analysis of the various theories of liability advanced by Gaytan. With the exception of the genuine issues of material fact which we have identified above with respect to Gaytan's claim against Graham on the theory of retained control over safety practices, we find this assignment of error to be without merit.

### V. CONCLUSION

For the reasons discussed, there are no genuine issues of material fact as to any of Gaytan's claims against Wal-Mart, and the district court did not err in sustaining its motion for summary judgment. There are also no genuine issues of material fact with respect to Gaytan's claims against Graham, with the exception of the direct negligence claim arising from Graham's alleged retention of control over the use of safety equipment on the roof. Because there are genuine issues of material fact on that claim, the district court erred in sustaining Graham's motion for summary judgment. Accordingly, we affirm the judgment of the district court as to Wal-Mart, but reverse the judgment with respect to Graham and remand the cause to the district court for further proceedings consistent with this opinion.

Affirmed in part, and in part reversed and
remanded for further proceedings.

Miller-Lerman, J., participating on briefs.