Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/15/2017 09:11 AM CDT

Angela Rodriguez and Adan Rodriguez,
Special Administrators of the Estate of
Melissa Rodriguez, appellants, v. Catholic
Health Initiatives, doing business as
CHI Health, et al., appellees.

___ N.W.2d ___

Filed June 23, 2017.    No. S-15-1205.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Pleadings: Appeal and Error.** An appellate court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. However, an appellate court reviews de novo an underlying legal conclusion that the proposed amendments would be futile.
3. **Motions to Dismiss: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions.
4. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.
5. **Actions: Pleadings: Notice.** Civil actions are controlled by a liberal pleading regime; a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.
6. **Actions: Pleadings.** The rationale for a liberal notice pleading standard in civil actions is that when a party has a valid claim, he or she should

recover on it regardless of a failure to perceive the true basis of the claim at the pleading stage.

7. **Negligence: Proof.** In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

8. **Negligence.** The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

9. ____. The existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances.

10. ____. Duty rules are meant to serve as broadly applicable guidelines for public behavior, i.e., rules of law applicable to a category of cases.

11. ____. Whether a duty exists is a policy decision.

12. **Negligence: Mental Health.** Under Neb. Rev. Stat. § 38-2137(2) (Reissue 2016), the duty to warn of or to take reasonable precautions to provide protection from violent behavior shall arise only under the limited circumstances specified in § 38-2137(1), and shall be discharged by the mental health practitioner if reasonable efforts are made to communicate the threat to the victim or victims and to a law enforcement agency.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Reversed and remanded for further proceedings.

Brian E. Jorde, of Domina Law Group, P.C., L.L.O., for appellants.

Patrick G. Vipond, William R. Settles, and Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for appellees Catholic Health Initiatives, doing business as CHI Health, et al.

J. Scott Paul and Jay D. Koehn, of McGrath, North, Mullin & Kratz, P.C., L.L.O., and, on brief, Elizabeth Bruening Smith, for appellee The Noll Company.

Joseph S. Daly and Mary M. Schott, of Sodoro, Daly, Shomaker & Selde, P.C., L.L.O., for appellees UNMC Physicians and Jane Doe Physician #1.

Heavican, C.J., Miller-Lerman, Stacy, and Kelch, JJ., and Bishop, Judge.

Miller-Lerman, J.

## NATURE OF CASE

After Melissa Rodriguez was killed by Mikael Loyd, Melissa's parents, Angela Rodriguez and Adan Rodriguez, as the special administrators of Melissa's estate (collectively the appellants), brought this negligence and wrongful death action in the district court for Douglas County. The appellants filed their second amended complaint against numerous defendants whom we treat as three groups. The first group is collectively referred to as the "Lasting Hope defendants," composed of Catholic Health Initiatives, doing business as CHI Health; Alegent Creighton Health, now known as CHI Health Alegent Creighton Clinic; Lasting Hope Recovery Center of Catholic Health Initiatives (Lasting Hope); "John Doe #1," an employee of Lasting Hope; "John Doe #2," an employee of Lasting Hope; three Noll entities (Noll Human Resource Services, The Noll Company, and Noll, Inc.); and "Jane Doe Nurse #1," an employee of a Noll entity. The second group is collectively referred to as the "UNMC defendants," composed of UNMC Physicians (UNMC) and "Jane Doe Physician #1," an employee of UNMC. The third group is collectively referred to as the "City defendants" composed of the City of Omaha, "Officer Doe #1," and "Officer Doe #2." The appellants claimed that the defendants were negligent in various respects and specifically in failing to protect Melissa from Loyd. All the defendants moved to dismiss the second amended complaint. The district court granted the defendants' motions to dismiss. The district court denied the appellants' leave to amend their second amended complaint except as to the City defendants. The appellants did not amend their allegations regarding the City defendants, and the City defendants stood dismissed. The appellants filed this appeal challenging the dismissal of the Lasting Hope defendants and UNMC

defendants. The City defendants are not parties to this appeal. We determine that the district court erred when it dismissed the appellants' second amended complaint as to the Lasting Hope defendants. We further conclude that the district court erred when it denied the appellants' motion to amend the second amended complaint to add allegations relative to the UNMC defendants and dismissed the UNMC defendants. We reverse, and remand for further proceedings.

## STATEMENT OF FACTS

According to the appellants' second amended complaint, which is the operative pleading in this case, on or about June 11, 2013, Loyd assaulted and battered Melissa. The Omaha Police Department (OPD) was contacted regarding the incident, and officers completed a domestic violence report. Charges were not brought against Loyd at that time, but an investigation was ongoing. The second amended complaint alleges that in July, Loyd falsely imprisoned Melissa for a period of time. Melissa contacted the OPD regarding Loyd at various times in July and August.

On August 7, 2013, the OPD issued an arrest warrant for Loyd for the misdemeanor assault and battery of Melissa. On August 8, Loyd contacted the OPD and voluntarily met with and spoke to officers. During this meeting, "Loyd expressed a desire to kill." The OPD then placed Loyd under emergency protective custody because it believed that Loyd was "mentally ill and an imminent threat of danger to himself or others." Loyd was transferred to Lasting Hope. The appellants allege that at the time Loyd was placed under emergency protective custody, Lasting Hope was "aware of his misdemeanor warrant." The second amended complaint further states: "Lasting Hope knew or should have known that the [emergency protective custody] hold placed on Loyd was the result of Loyd threatening to kill his mother and professing he was a danger to himself and others."

Loyd remained at Lasting Hope from August 8 to 14, 2013. Pursuant to Neb. Rev. Stat. § 71-919 (Reissue 2009), within 36 hours of being admitted to a mental health facility, an individual under emergency protective custody must undergo a mental health evaluation to be performed by a mental health professional. Section 71-919(4) provides that "[a] person shall be released from emergency protective custody after completion of such evaluation unless the mental health professional determines, in his or her clinical opinion, that such person is mentally ill and dangerous or a dangerous sex offender." On August 11, Jane Doe Physician #1, an employee of UNMC, prepared a mental health evaluation of Loyd and found "Loyd not to be a danger to himself or others."

According to the second amended complaint, while Loyd was at Lasting Hope, he made repeated calls to Melissa from Lasting Hope's landline telephone. Loyd called Melissa on August 8, at least 6 times on August 10, and 18 times on August 11.

On August 12, 2013, Loyd called the OPD to effectively turn himself in on the outstanding arrest warrant. OPD officers went to Lasting Hope to arrest Loyd, but Lasting Hope refused to release Loyd to the officers because the emergency protective custody hold was still in effect. The second amended complaint states that "[i]t is believed Jane Doe Nurse #1, employed by Noll, was responsible for the discharge of Loyd and involved in the failure to properly review the circumstances of Loyd's admission and communicate effectively to the OPD that Lasting Hope planned to release Loyd."

According to the second amended complaint, on August 14, 2013, "Loyd left Lasting Hope on his own, without supervision, being questioned or stopped, and without Lasting Hope even noticing he was gone. Loyd freely walked out the facility sometime between 12:49 p.m. and 2:22 p.m." Lasting Hope did not notify the OPD on August 14 that Loyd had left its premises. Sometime after 4:15 p.m. on August 14, Loyd killed Melissa and later returned to Lasting Hope at

approximately 8 p.m. Subsequently, on August 16, while he was still at Lasting Hope, Loyd was arrested for the murder of Melissa.

The second amended complaint notes that in September 2013, Loyd was found not competent to stand trial, and that in January 2014, Loyd was diagnosed as paranoid schizophrenic.

The appellants filed their second amended complaint on July 17, 2015. They claimed that the defendants were negligent in part for failing to provide Loyd with adequate mental health treatment and for failing to protect Melissa from Loyd. All the defendants filed motions to dismiss for failure to state a claim upon which relief can be granted. The defendants also filed motions to stay discovery. On July 31, the district court filed an order in which it granted the defendants' motions to stay discovery until it had had an opportunity to rule on the pending motions to dismiss.

After a hearing, on October 16, 2015, the district court filed an order in which it granted all of the defendants' motions to dismiss. The district court stated that the only issue raised by the motions to dismiss was whether any of the defendants owed a duty. The district court quoted *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006):

> "a psychiatrist is liable for failing to warn of and protect from a patient's threatened violent behavior, or failing to predict and [warn of and] protect from a patient's violent behavior, when the patient has communicated to the psychiatrist a serious threat of physical violence against himself, herself, or a reasonably identified victim or victims. The duty to warn of or to take reasonable precautions to provide protection from violent behavior shall arise only under those limited circumstances . . . ."

The district court determined that the duty required of psychologists, psychiatrists, and other mental health practitioners, as set forth in *Munstermann*, is the same duty that was required of the defendants in this case, except for the City defendants. The district court then stated that

> there is no allegation contained in [the appellants']
> Second Amended Complaint which suggests that . . .
> Loyd ever indicated in any way, any thought or sug-
> gestion of causing harm to specifically Melissa . . . the
> decedent herein. . . . Nowhere in [the appellants'] Second
> Amended Complaint is there an allegation that . . . Loyd
> indicated in any manner to any of the named Defendants
> his thoughts regarding or his intention to cause any injury
> to the victim Melissa . . . .

Accordingly, the district court determined that based on the facts alleged in the second amended complaint, the Lasting Hope defendants and the UNMC defendants did not owe a duty to Melissa.

The district court further determined that based on the allegations set forth in the second amended complaint, the City defendants owed no duty to Melissa. Therefore, the district court granted all the defendants' motions to dismiss. The district court gave the appellants 2 weeks to amend their second amended complaint against the City defendants. The appellants did not amend their second amended complaint against the City defendants.

On October 23, 2015, the appellants filed a motion to alter or amend the October 19 order or, in the alternative, a motion to certify the October 19 order as a final judgment. The appellants requested that the district court determine that the defendants owed a duty to Melissa. The appellants also sought leave to amend their second amended complaint with respect to the UNMC defendants by adding the sentence: "'Loyd sufficiently communicated to Defendants a serious threat of physical violence to a reasonably identifiable victim. Melissa . . . was a reasonably identifiable victim.'"

On November 24, 2015, the district court filed an order in which it denied the appellants' motions. Specifically, the court denied the appellants leave to amend the second amended complaint, stating that the amendment would be futile. In its November 24 order, the district court further acknowledged

that the appellants had not amended their second amended complaint against the City defendants and that therefore, "this action must stand as dismissed against" the City defendants.

The appellants do not appeal the district court's determinations with respect to the City defendants, and they are not parties to this appeal. However, the appellants do appeal the dismissals as to the Lasting Hope defendants and the UNMC defendants, as well as the denial of their motion to amend the allegations in the second amended complaint relative to the UNMC defendants.

The appellants filed a timely appeal.

## ASSIGNMENTS OF ERROR

The appellants claim, consolidated and restated, that the district court erred when it (1) dismissed the appellants' second amended complaint against the Lasting Hope defendants and the UNMC defendants for failing to allege facts that showed they owed a duty to Melissa and (2) denied the appellants' motion for leave to amend the allegations in their complaint relating to the claims against the UNMC defendants.

## STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss is reviewed de novo. *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017).

[2] With respect to the proper standard of review for a denial of a motion to amend a pleading, we have stated that we review a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017). However, we review de novo an underlying legal conclusion that the proposed amendments would be futile. *Id*.

## ANALYSIS

*Review of Orders of Dismissal.*

[3] The appellants claim that the district court erred when it granted the motions to dismiss for failure to state a claim

filed by the Lasting Hope defendants and the UNMC defendants. When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions. *Tryon v. City of North Platte, supra*. Accordingly, for the purpose of reviewing the court's dismissal of the second amended complaint, the facts that we have set out in this opinion are the facts as alleged by the appellants which we accept as true.

[4] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Id*. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id*.

[5,6] Nebraska is a notice pleading jurisdiction. Civil actions are controlled by a liberal pleading regime; a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted. *Id.* The rationale for this liberal notice pleading standard in civil actions is that when a party has a valid claim, he or she should recover on it regardless of a failure to perceive the true basis of the claim at the pleading stage. *Id*.

*Lasting Hope Defendants.*

The appellants contend that, due to their custodial relationship with Loyd, the Lasting Hope defendants owed a common law duty of care to protect Melissa from Loyd and that the district court erred when it granted the motions to dismiss as to these defendants. We find merit to this assignment of error.

In their second amended complaint, the appellants allege that Lasting Hope is an affiliate of CHI Health Alegent Creighton Clinic, which in turn is an affiliate of CHI Health. They further allege that John Doe #1 and John Doe #2 are employees of Lasting Hope. The appellants also allege that Jane Doe Nurse #1 is an employee of a Noll entity and that Lasting Hope contracted with a Noll entity for its services. Given the foregoing relationships and for the sake of simplicity as we indicated above, we will sometimes refer to these defendants as the Lasting Hope defendants. We further note that within the group of Lasting Hope defendants, certain entities are employers and that the appellants allege that such defendants are liable under the doctrine of respondeat superior. Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business. *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016).

[7,8] In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Pittman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12 (2016). The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id*.

[9-11] In *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010), we adopted the approach of 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), and held that an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. After *A.W.*, the existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. *Phillips v. Liberty Mut. Ins. Co.*, 293 Neb. 123, 876 N.W.2d 361 (2016). Moreover, "[d]uty rules are meant to serve as broadly applicable guidelines

for public behavior, i.e., rules of law applicable to a category of cases." *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. at 212-13, 784 N.W.2d at 914-15. Whether a duty exists is a policy decision. *Phillips v. Liberty Mut. Ins. Co., supra*.

With respect to a defendant's duty to control the behavior of a third party, we noted in *Ginapp v. City of Bellevue*, 282 Neb. 1027, 809 N.W.2d 487 (2012), that this court had previously relied on the Restatement (Second) of Torts § 315(a) at 122 (1965), which provided that there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another, unless "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct," and explained that "[o]ne who takes charge of a third person whom he knows or should know [is] likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm," *id*., § 319 at 129. See, also, *Bartunek v. State*, 266 Neb. 454, 666 N.W.2d 435 (2003).

Similarly, § 37 of 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2012), which we referred to approvingly in *Ginapp v. City of Bellevue, supra*, explains that an actor whose conduct has not created a risk of physical harm to another has no duty of care to that other person, unless an affirmative duty created by another circumstance is applicable. Such an affirmative duty can arise from the circumstance of a special relationship.

We have previously adopted certain special relationship provisions found in the Restatement (Third), *supra*. In particular, we have adopted special relationship provisions in § 40 regarding the duty owed to another with regard to risks that arise within the relationship. See, *Peterson v. Kings Gate Partners*, 290 Neb. 658, 861 N.W.2d 444 (2015) (landlord-tenant relationship in § 40(b)(6)); *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012) (employer-employee relationship in § 40(b)(4)).

Special relationships are also described in § 41 of the Restatement (Third), *supra*. Section § 41(a), which we referred to in *Ginapp v. City of Bellevue, supra*, provides: "An actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship." Section 41(b) lists special relationships, including the custodial relationship as follows: "Special relationships giving risk to the duty provided in Subsection (a) include: . . . (2) a custodian with those in its custody." In this regard, we note that the comments to § 41 state that custodial relationships include a jailer of a dangerous criminal and hospitals for the mentally ill and for those with contagious diseases. See 2 Restatement (Third), *supra*, § 41, comment *f*. We believe § 41(b) is consistent with our jurisprudence and prudent. We therefore adopt the custodial special relationship outlined in § 41(b)(2) of the Restatement (Third), *supra*, at this time.

We have stated that the duty of a custodian to prevent a person in custody from causing harm to others is premised on the degree of control afforded to one who "'takes charge'" of another. *Ginapp v. City of Bellevue*, 282 Neb. 1027, 1034, 809 N.W.2d 487, 493 (2012). The Restatement (Third) explains that the custodial relationship need not be "full-time physical custody giving the custodian complete control over the other person," but that to the extent that "there is some custody and control of a person posing dangers to others, the custodian has an affirmative duty to exercise reasonable care, consistent with the extent of custody and control." 2 Restatement (Third), *supra*, § 41, comment *f*. at 67. See, also, *Ginapp v. City of Bellevue, supra*.

In this case, we determine that the appellants have alleged sufficient facts in their second amended complaint, which we accept as true, to show that Loyd was in Lasting Hope's custody and that therefore, such facts give rise to a duty. The appellants allege that the OPD had taken Loyd into emergency protective custody and transferred him to Lasting Hope. Pursuant

to § 71-919 of the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. §§ 71-901 to 71-962 (Reissue 2009 & Cum. Supp. 2016), an individual admitted under emergency protective custody is to undergo a mental health evaluation to be performed by a mental health professional within 36 hours of being admitted to a mental health facility. Section 71-919(4) provides that such an individual is to be released from emergency protective custody after the completion of such evaluation, unless the mental health professional determines that the person is mentally ill and dangerous or a dangerous sex offender.

According to the second amended complaint, Loyd was transferred to Lasting Hope on August 8, 2013, under emergency protective custody. He underwent a mental health evaluation and was found not to be a danger to himself or others. However, Lasting Hope did not discharge Loyd after the completion of the mental health evaluation. In fact, the allegations are to the contrary.

The appellants allege that on August 12, 2013, Loyd called the OPD from Lasting Hope to turn himself in on his outstanding arrest warrant. The appellants alleged that when the officers arrived at Lasting Hope to arrest Loyd, "Lasting Hope represented to Officer Doe #1 and Officer Doe #2 that Loyd could not be released and an arrest could not be made because the [emergency protective custody] hold was still in effect." The appellants further alleged that "[d]espite the OPD's efforts to take Loyd into their custody and control, Lasting Hope prevented Loyd from leaving." According to the appellants, Jane Doe Nurse #1 in particular "was responsible for the discharge of Loyd and involved in the failure to properly review the circumstances of Loyd's admission and communicate effectively to the OPD that Lasting Hope planned to release Loyd."

These facts alleged in the appellants' second amended complaint, which we accept as true, are sufficient to demonstrate that Lasting Hope had "taken charge" of Loyd. Lasting Hope

did not allow Loyd to be released into the OPD's custody when the officers arrived at Lasting Hope to arrest him on his outstanding warrant, even though it appears that emergency protective custody had expired. Taking these allegations as true, they show that by not releasing Loyd into the OPD's custody, Lasting Hope demonstrated that it had taken charge of Loyd and had established custody over him. Accordingly, based on the facts as pled in the second amended complaint, Lasting Hope had Loyd in its custody, and applying § 41(b) of 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2012), noted above, the Lasting Hope defendants therefore owed a duty of reasonable care to third parties, including Melissa, with regard to risks posed by Loyd, consistent with the nature and extent of custody exhibited by Lasting Hope. The district court erred when it determined that the Lasting Hope defendants did not owe a duty to Melissa. We further determine that the appellants pled sufficient facts which could establish that the Lasting Hope defendants breached the duty owed to Melissa. The appellants allege in their second amended complaint that "[o]n August 14, 2013, Loyd left Lasting Hope on his own, without supervision, being questioned or stopped, and without Lasting Hope even noticing he was gone." The appellants allege that Lasting Hope failed to inform the OPD that Loyd had left its premises and failed to warn Melissa that Loyd was no longer at Lasting Hope. The appellants further allege that the Lasting Hope defendants' actions and inaction were the proximate cause of Melissa's death.

Accepting these facts as true, we determine that the appellants alleged sufficient facts to state claims against the Lasting Hope defendants which are plausible on their face. Thus, we determine that the district court erred when it granted the motions to dismiss and dismissed the appellants' case with respect to these defendants. We reverse the decision of the district court with respect to the Lasting Hope defendants

and remand the cause for further proceedings consistent with this opinion.

*UNMC Defendants.*

The appellants contend that because the UNMC defendants had a duty to warn Melissa or otherwise protect Melissa from Loyd's violent behavior, the district court erred when it granted the motion to dismiss filed by these defendants or, in the alternative, the district court erred when it denied the appellants' motion to amend the allegations in the second amended complaint which relate to claims against the UNMC defendants. We assume in our analysis that the proposed amendment is given in good faith. With this understanding, we find merit to appellants' assignment of error in which they claim that denial of their motion to amend was error.

In its order granting the motions to dismiss, the district court acknowledged that the appellants' second amended complaint contained an allegation that Loyd "'expressed feelings of violence,'" but nevertheless concluded that an absence of an allegation that "Loyd indicated in any manner to any of the named Defendants his thoughts regarding or his intention to cause any injury to the victim Melissa . . . is fatal." The appellants contend that the allegations taken together were sufficient to state a cause of action against the UNMC defendants but that in any event, this perceived flaw can be cured by an amendment adding the following sentence: "Loyd sufficiently communicated to Defendants a serious threat of physical violence to a reasonably identifiable victim. Melissa . . . was a reasonably identifiable victim." In denying appellants' motion to amend, the district court stated that the amendment would be futile. We review de novo a trial court's conclusion that a proposed amendment would be futile. *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017). In this case, we conclude that the district court erred as a matter of law.

We have stated that "'[a] district court's denial of leave to amend pleadings is appropriate only in those limited

circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.'" *Estermann v. Bose*, 296 Neb. at 251, 892 N.W.2d at 873, quoting *Golnick v. Callender*, 290 Neb. 395, 860 N.W.2d 180 (2015).

In *Estermann*, we quoted the Nebraska Court of Appeals' opinion in *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007), which held that where leave to amend is sought

> before discovery is complete and before a motion for summary judgment has been filed, the question of whether such amendment would be futile is judged by reference to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) [now codified as Neb. Ct. R. of Pldg. [§] 6-1112(b)(6)]. Leave to amend in such circumstances should be denied as futile only if the proposed amendment cannot withstand a rule 12(b)(6) motion to dismiss."

296 Neb. at 253, 892 N.W.2d at 875, quoting *Bailey v. First Nat. Bank of Chadron, supra*.

In this case, the appellants sought to amend their second amended complaint after the district court had granted the defendants' motion to dismiss, but before discovery was complete and before a motion for summary judgment had been filed. Therefore, the appellants' motion for leave to amend should have been denied as futile only if the complaint with the addition of the proposed amendment cannot withstand a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6).

With respect to the existing second amended complaint, paragraph 48 alleges that "[d]uring this time, Loyd was an imminent danger to himself and Melissa" and paragraph 53 alleges that "[a]t all times, Loyd remained mentally ill and dangerous to himself, Melissa, and others." In their motion to amend, the appellants sought to amend their second amended complaint by specifically adding the sentence: "Loyd sufficiently communicated to Defendants a serious threat of

physical violence to a reasonably identifiable victim. Melissa
. . . was a reasonably identifiable victim." In order to deter-
mine the propriety of the ruling on the proposed amendment,
we review the applicable substantive law.

Although Jane Doe Physician #1 is a psychiatrist, we refer
to statutes regarding mental health practitioners for our legal
framework. Mental health treatment providers are liable for
failing to warn of a patient's threatened behavior only under
certain exceptional circumstances. The Mental Health Practice
Act, see Neb. Rev. Stat. §§ 38-2102 to 38-2139 (Reissue
2016), and the Psychology Practice Act, see Neb. Rev. Stat.
§§ 38-3101 to 38-3132 (Reissue 2016), contain limits on lia-
bility. A mental health practitioner or psychologist is not liable
for failing to warn of a patient's threatened behavior unless the
patient has communicated to the practitioner a serious threat
of physical violence to a reasonably identifiable victim. See
§§ 38-2137(1) and 38-3132(1).

[12] The pertinent statute in the Mental Health Practice Act,
§ 38-2137(1), states:

> There shall be no monetary liability on the part of,
> and no cause of action shall arise against, any person
> who licensed or certified pursuant to the Mental Health
> Practice Act for failing to warn of and protect from a
> patient's threatened violent behavior or failing to predict
> and warn of and protect from a patient's violent behavior
> except when the patient has communicated to the mental
> health practitioner a serious threat of physical violence
> against himself, herself, or a reasonably identifiable vic-
> tim or victims.

Section 38-2137(2) goes on to state:

> The duty to warn of or to take responsible precautions to
> provide protection from violent behavior shall arise only
> under the limited circumstances specified in subsection
> (1) of this section. The duty shall be discharged by the
> mental health practitioner if reasonable efforts are made

to communicate the threat to the victim or victims and to a law enforcement agency.

A section in the Psychology Practice Act, § 38-3132(1), is substantially similar to § 38-2127(1) of the Mental Health Practice Act. Section 38-3132(1) provides:

No monetary liability and no cause of action shall arise against any psychologist for failing to warn of and protect from a client's or patient's threatened violent behavior or failing to predict and warn of and protect from a client's or patient's violent behavior except when the client or patient has communicated to the psychologist a serious threat of physical violence against a reasonably identifiable victim or victims.

In *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006), we noted that there was no comparable statute addressed to potential liability of a psychiatrist. But we nevertheless concluded that the duty described in the foregoing statutes should be required of psychiatrists. In *Munstermann*, we stated that "a duty to warn and protect arises only if the information communicated to the psychiatrist leads the psychiatrist to believe that his or her patient poses a serious risk of grave bodily injury to another." 271 Neb. at 848, 716 N.W.2d at 85. We stated that the "question is whether a serious threat of physical violence was actually 'communicated' to the psychiatrist." *Id*.

In the appellants' second amended complaint, the appellants alleged that Loyd had assaulted and battered Melissa in June 2013 and that the OPD had been contacted regarding the incident. The OPD completed a domestic violence report regarding the incident, and an investigation was ongoing. The appellants also alleged that Melissa contacted the OPD at various times in July and August regarding Loyd's violence toward her.

On August 7, 2013, the OPD issued an arrest warrant for Loyd for the misdemeanor assault and battery of Melissa. The appellants specifically alleged that Lasting Hope was "aware

of his misdemeanor warrant" attributable to his prior violence toward Melissa. On August 8, when speaking with the OPD, Loyd "expressed a desire to kill," and he was therefore placed under emergency protective custody and transferred to Lasting Hope. The appellants alleged that "Lasting Hope knew or should have known that the [emergency protective custody] hold placed on Loyd was the result of Loyd threatening to kill his mother and professing he was a danger to himself and others." The appellants specifically allege that while he was at Lasting Hope, Loyd made repeated calls to Melissa from Lasting Hope's landline telephone.

In this case, the appellants allege in their second amended complaint that Jane Doe Physician #1, a psychiatrist employed by UNMC, conducted a mental health evaluation of Loyd. Jane Doe Physician #1 was brought in to evaluate Loyd, and for purposes of this lawsuit, the scope of the duty of Jane Doe Physician #1 was dictated by the context and purpose for which she was consulted. As we noted above, Loyd was taken to Lasting Hope pursuant to the emergency protective custody provisions of the Nebraska Mental Health Commitment Act. Section 71-919(4) provides:

> The administrator of the facility shall have such person evaluated by a mental health professional as soon as reasonably possible but not later than thirty-six hours after admission. The mental health professional shall not be the mental health professional who causes such person to be taken into custody under this section and shall not be a member or alternate member of the mental health board that will preside over any hearing under the Nebraska Mental Health Commitment Act or the Sex Offender Commitment Act with respect to such person. A person shall be released from emergency protective custody after completion of such evaluation unless the mental health professional determines, in his or her clinical opinion, that such person is mentally ill and dangerous or a dangerous sex offender.

The language of the quoted statute described the context of Jane Doe Physician #1's task: to evaluate Loyd to determine whether he was mentally ill and dangerous. Paragraphs 27 et seq. of the second amended complaint refer to and cite the emergency protective custody provisions, and it flows from § 71-919(4) that in Jane Doe Physician #1's evaluation of the person in custody, Loyd would be called upon to communicate to Jane Doe Physician #1 information bearing on his dangerousness with respect to himself or others. Under *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006), Jane Doe Physician #1, a psychiatrist, is exposed to liability in the limited circumstance where information has been communicated to her which leads her to believe that Loyd poses a serious threat of physical harm against a reasonably identifiable victim. Given the existing allegations in the second amended complaint, the addition of the proposed amendment results in a complaint which under *Munstermann* and by application of respondeat superior, states a cause of action against the UNMC defendants and can withstand a motion to dismiss under § 6-1112(b)(6).

Upon our de novo review, we conclude that leave to amend would not be futile and that the district court's legal conclusion to the contrary was error. We conclude that the district court erred when it denied the appellants' motion to amend and dismissed the appellants' case with respect to the UNMC defendants. We reverse the rulings of the district court denying the appellants' motion to amend and dismissing the UNMC defendants and remand the cause for further proceedings consistent with this opinion.

## CONCLUSION

We determine that the district court erred when it dismissed the appellants' second amended complaint for failure to state a claim with respect to the Lasting Hope defendants. We further conclude that appellants' proposed amendment would not be futile and that the district court erred when it

denied the appellants' motion to amend the second amended complaint and dismissed the action as to the UNMC defendants. Therefore, the court's order dismissing the appellants' complaint as to the Lasting Hope defendants and the UNMC defendants and its further order denying the appellants' motion for leave to file an amended complaint are reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, CASSEL, and FUNKE, JJ., not participating.