IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MALONE V. MCCULLOUGH CONSTRUCTION

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHRISTOPHER MALONE, APPELLANT,

V.

MCCULLOUGH CONSTRUCTION, LLC, AND
MILLER BUILDERS, LLC, APPELLEES.

Filed May 30, 2023.    No. A-22-722.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed.

John C. Fowles, of Fowles Law Office, P.C., L.L.O., for appellant.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellees.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Christopher Malone appeals an order of the Gage County District Court granting summary judgment to Miller Builders, LLC. After suffering a workplace injury, Malone brought this suit against the general contractor, Miller Builders, alleging Miller Builders is liable for Malone's injuries pursuant to the Nebraska Workers' Compensation Act and general negligence theories of liability. Upon our review of the record, we find that the district court did not err in granting summary judgment in favor of Miller Builders.

## BACKGROUND

Miller Builders is a construction company based in Lincoln, Nebraska, owned and operated by Dustin Miller. Miller works with individual landowners to design a house plan and then serves as the general contractor for the construction. In 2018, Miller was hired to build a house near Firth,

Nebraska (hereinafter the "Firth Project"). Miller, through an oral agreement, hired McCullough Construction, LLC, owned and operated by Jamie McCullough, to complete the framing of the house. McCullough had two employees working for him at the Firth Project. Miller requested and received McCullough Construction's certificate of insurance showing that McCullough had workers' compensation insurance for the period in which the contemplated work would be performed. Miller Builders did not carry workers' compensation insurance because it did not have any employees.

Miller did not personally participate in the framing work for the Firth Project. He did make brief visits to the worksite to check on the progress of McCullough's work and to discuss scheduling. Miller did not give direction to the workers regarding how they should complete the framing, did not provide supplies or materials for the framing work, and did not need to give permission to McCullough to hire labor or be on the premises of the Firth Project. Miller did not inspect the Firth Project work site or employ safety measures. Instead, Miller relied on McCullough to follow his own safety guidelines and the industry standards related to framing.

McCullough entered into an oral agreement with Andel Building Corporation, owned and operated by Jim Andel, to assist in completing the framing work. Andel Building had two employees, including Malone, working for it at the Firth Project in addition to Andel himself. McCullough did not request or receive proof of workers' compensation insurance from Andel Building, which carried no such insurance for its employees. According to the oral agreement made between McCullough and Andel, McCullough received payment from Miller, and then McCullough paid Andel based on percentage of work completed and hours worked. Andel then paid his employees from the amount he received from McCullough. Andel did not have communications with Miller. In January 2019, Andel brought Malone to the work site of the Firth Project. Andel paid Malone an hourly wage for his work. Andel dictated Malone's work schedule and instructed Malone on the work he did on the Firth Project. Malone identified Andel and McCullough as his bosses for the project.

On January 31, 2019, Andel and McCullough assigned Malone to work on sheeting a porch roof, which required him to be on the roof which was supported by a temporary brace. The brace collapsed causing Malone to fall and sustain serious injuries to his back and heels. McCullough and another worker were also injured in the accident. The cause of the accident was determined to be the improper construction of the temporary brace that supported the partially constructed roof. The temporary brace was constructed by Andel. As a result of the accident, Malone spent 12 days in the hospital and had to undergo surgery on his back and heels.

The Occupational Safety and Health Administration (OSHA) conducted an investigation after the accident. McCullough and Andel were issued citations and penalized by OSHA for failing to protect their employees. Initially, Miller received a citation as well. However, Miller proved that he did not have employees and the citation was rescinded. Miller was not present at the Firth Project on the day of the accident. He was familiar with the temporary brace but did not inspect or supervise the construction of the temporary brace.

In 2019, Malone filed a complaint against McCullough Construction and Andel Building as statutory employers in the Nebraska Workers' Compensation Court pursuant to Neb. Rev. Stat. § 48-114 (Reissue 2021), case entitled *Christopher Malone v. Andel Building Corporation and McCullough Construction, LLC*, Doc. 219 No. 0606. On Malone's motion, the complaint against

Andel Building was dismissed without prejudice on July 30, 2020. Thereafter, Malone reached a settlement of his complaint against McCullough Construction. The compensation court dismissed the case against McCullough Construction with prejudice on August 11, 2020, based on the stipulation of the parties. Thus, Malone's sole source of compensation to this point is the settlement with McCullough Construction.

On January 6, 2020, Malone filed a complaint in the district court for Gage County alleging negligence against Andel Building and McCullough Construction. On January 21, Malone filed a motion to dismiss the complaint as to Andel Building only. On August 11, the same day that the compensation court case was dismissed, Malone filed a second amended complaint which added Miller Builders to the negligence action. On November 19, Malone filed a third amended complaint which alleged two theories of liability. The first theory of liability was based on negligence, and the second theory was premised upon Miller being an employer pursuant to Neb. Rev. Stat. § 48-116 (Reissue 2021). Miller Builders filed a motion for summary judgment on June 22, 2021. Pursuant to its motion, Miller Builders provided the court with a statement of undisputed material facts. Malone did not dispute 15 of the paragraphs in Miller Builders' statement.

A hearing on Miller Builders' motion for summary judgment was held on August 17, 2021. The court received depositions from Miller, Malone, Andel, and McCullough into evidence subject to objections made by counsel. Additional exhibits were received without objection. In a written order dated November 28, the district court found that no genuine issues of material fact existed and sustained Miller Builders' motion for summary judgment. Malone appealed, but we summarily dismissed the appeal for lack of jurisdiction. After receiving our mandate, the district court held a status hearing regarding the status of the case and the unresolved claims against McCullough Construction. The parties apparently agreed that McCullough Construction's sole interest in the case was based on its rights to subrogation under Neb. Rev. Stat. § 48-118 (Reissue 2021). As such, the district court dismissed the complaint against McCullough Construction on September 13, 2022. Malone then timely filed this appeal.

## ASSIGNMENTS OF ERROR

Malone has assigned six errors which we consolidate and restate as two. First, Malone asserts that the court erred in finding that Miller Builders was not an employer of Malone pursuant to § 48-116. Second, and in the alternative, Malone assigns the court erred in finding that Miller Builders did not owe Malone a common law duty of care owed by an employer to an employee. As to both of these issues Malone asserts the district court erred in finding that there were no genuine issues of material fact present in this case.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

ANALYSIS

Malone's claims against Miller Builders presents two distinct theories of liability, which he acknowledges are "probably mutually exclusive." Brief for appellant at 12. We will address each theory of liability as it relates to the motion for summary judgment.

We pause first to list the relevant facts which the parties have agreed are undisputed as provided by Miller Builders in their statement of undisputed material facts and Malone's annotated statement of facts given in response. We number them as they are numbered in Miller Builders' statement of facts.

(1) . . . Miller Builders . . . is a construction company in Lincoln, Nebraska that primarily builds new residential homes as the general contractor.

(2) Dustin Miller is the owner and sole member of Miller Builders, LLC. As the general contractor on its projects, Miller Builders subcontracts out all of the labor in every area of constructing a new residential home, including but not limited to the framing portion of construction.

. . . .

(4) In 2018, Miller Builders entered into a new home residential construction agreement . . . to construct a home [near] Firth, Nebraska, . . . referred to as the "Firth Project". . . .

(5) As is customary, Miller Builders entered into an oral subcontract with McCullough Construction, . . . for framing the Firth Project. Jamie McCullough is the owner and sole member of McCullough Construction. McCullough Construction is a framing subcontractor that provides labor for general contractors in the new home residential construction sector. Miller Builders requested and received McCullough Construction's certificate of insurance showing proof of workers' compensation coverage.

(6) Miller Builders directly paid McCullough Construction as the subcontractor for framing the Firth Project.

. . . .

(9) McCullough Construction, not Miller Builders, paid Andel Building based on percentage of work completed and hours worked.

(10) At the Firth Project, McCullough Construction employed two employees. . . . Jamie McCullough also worked as a laborer on the Firth Project.

(11) At the Firth Project, Andel Building employed two employees, [including Malone.] . . . Andel also worked as a laborer on the Firth Project.

. . . .

(14) As concerns Malone's employment, Andel Building paid Malone on an hourly basis. . . . Andel Building supervised Malone's work and provided tools and supplies for the Firth Project. Andel Building instructed Malone to be on the Firth Project and instructed him where and the manner in which to work on the Firth Project. Malone was not able to work independently and needed supervision by Andel.

. . . .

(17) Miller Builders did not inspect McCullough Construction or Andel Building's work or safety measures. It also did not impose or provide safety rules because Miller

Builders expected McCullough Construction to impose and follow its own safety guidelines and industry standards relating to framing.

(18) Approximately two (2) days until completion of the framing subcontract at the Firth Project, on January 31, 2019, Andel requested that Malone work on sheeting, which required Malone to be on a roof supported by a temporary brace, which ultimately collapsed and caused Malone to fall and sustain injuries. . . .

(19) Based on the OSHA investigation and Parties' testimony, the cause of the collapse was due to the improper construction of the standard temporary brace supporting the partially constructed roof. The temporary brace was fastened with nails instead of screws; thus, it did not secure properly to hold the weight of three (3) workers. The faulty temporary brace was constructed by Andel Building. There were materials available to construct an alternative brace that may have prevented the accident, but McCullough Construction and Andel Building chose not to construct the same.

. . . .

(21) Miller Builders was not present at the Firth Project on January 31, 2019. Miller had not been at the Firth Project for many days prior to the accident. Miller was generally familiar with the temporary brace, but did not inspect the brace nor instruct McCullough Construction or Andel Building to use or build that particular brace.

. . . .

(25) In 2019, Malone filed a cause of action against McCullough Construction and Andel Building as statutory employers in the Nebraska Workers' Compensation Court pursuant to . . . § 48-114, case entitled *Christopher Malone v. Andel Building Corporation and McCullough Construction, LLC*, Doc. 219 No. 0606. Malone filed a motion to dismiss without prejudice and the cause of action was dismissed on August 11, 2020. . . .

(Citations to the record omitted.)

*Statutory Employer Theory of Liability.*

Malone's initial theory of liability is that Miller Builders is an employer of Malone pursuant to § 48-116. Malone argues that a genuine issue of material fact exists regarding the relationship that existed between Miller Builders and Malone and whether Miller structured its relationship with McCullough, Andel, and Malone in an attempt to execute work without being responsible to Malone pursuant to the provisions of the Workers' Compensation Act. Malone further alleges that the district court erred in concluding that § 48-116 does not apply to a subcontractor of a subcontractor. Upon our review of the record, we find that the district court did not err in finding that Miller Builders was not Malone's employer.

Nebraska law requires, with very few exceptions, that every employee should be covered by workers' compensation insurance. See Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-101, *et seq*. (Reissue 2021). Principal employers can be held jointly and severally liable with an immediate employer for uninsured injuries to the immediate employer's workers. Section 48-116 provides:

Any person, firm, or corporation creating or carrying into operation any scheme, artifice, or device to enable him or her, them, or it to execute work without being responsible to the

workers for the provisions of the Nebraska Workers' Compensation Act shall be included in the term employer, and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of such act. This section, however, shall not be construed as applying to an owner who lets a contract to a contractor in good faith, or a contractor, who, in good faith, lets to a subcontractor a portion of his or her contract, if the owner or principal contractor, as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to write such insurance in this state, which policy or policies of insurance shall guarantee payment of compensation according to the Nebraska Workers' Compensation Act to injured workers.

The Nebraska Supreme Court described the purpose of § 48-116 in *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 626, 924 N.W.2d 326, 335 (2019):

The purpose of statutes such as § 48-116 is to protect employees of "irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, which has it within its power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." Another important reason for statutes like § 48-116 is to prevent evasion of compensation coverage by the subcontracting of the employer's normal work.

When a contractor fails to require a subcontractor to carry workers' compensation insurance and an employee of the latter sustains a job-related injury, the contractor is a statutory employer and, with the immediate employer subcontractor, is jointly and severally liable to pay compensation under the terms of the Nebraska Workers' Compensation Act.

The Supreme Court has further held that a contractor's act of engaging a subcontractor without actually compelling the subcontractor to acquire workers' compensation insurance constitutes a device to escape liability under the Workers' Compensation Act. *Kohout v. Bennett Constr.*, 296 Neb. 608, 894 N.W.2d 821 (2017). The laborer has the burden to prove, by a preponderance of the evidence, that the employer set up a scheme, artifice, or device to defeat provisions of the workers' compensation laws. *Id.* The existence of a scheme, artifice, or device does not require active fraud or evil design. *Id.*

Malone relies on *Martinez v. CMR Constr. & Roofing of Texas, supra*, to support his argument that Miller qualifies as an employer pursuant to § 48-116. In *Martinez*, CMR Construction was hired to repair and replace the roof of a single-family dwelling in Omaha, Nebraska. CMR Construction then assigned the roofing project to Rene Menjivar. Martinez, who was employed by Menjivar, was working on the roof when he fell two stories and suffered significant injuries. CMR Construction had ensured Menjivar carried workers' compensation insurance on a prior project, but that insurance had been cancelled prior to the start of the Omaha roofing project. In holding that CMR Construction had engaged in a scheme, artifice, or device pursuant to § 48-116, the Supreme Court relied on admissions made by CMR Construction that such scheme existed to evade workers' compensation coverage requirements. The court also pointed out that CMR Construction failed to verify the status of Menjivar's policy prior to the start

of the Omaha roofing project and that the policy previously held by Menjivar only covered laborers within the state of Texas, and therefore, offered no protections in Nebraska.

Unlike *Martinez*, Miller Builders has not made any admissions regarding a scheme, artifice, or device pursuant to § 48-116. The record does not support Malone's contention that Miller was conducting such a scheme, artifice, or device. Malone argues that because Miller Builders, like CMR Construction, did not have any employees, it was attempting to evade its' responsibilities regarding provision of workers' compensation insurance. However, the lack of employees was not dispositive to the court's holding. The scheme was found based on CMR Construction's reliance on Menjivar's outdated insurance policy that provided no protections in Nebraska as well as the admissions made by CMR Construction in the discovery process. Here, even though Miller Builders did not have employees, Miller took the steps necessary to ensure that the employees of his subcontractor were protected by workers' compensation insurance.

Miller Builders hired McCullough Construction to complete the framing work of the Firth Project. Before the project began, Miller required McCullough to provide proof of workers' compensation insurance, which McCullough presented. The certificate of insurance provided by McCullough demonstrated that McCullough Construction had workers' compensation insurance in place for a time period sufficient to cover the period that its workers would be completing the framing work on the Firth Project. McCullough then hired Andel to assist in the labor for the framing of the Firth Project. McCullough did not ask for proof of workers' compensation insurance from Andel. Malone argues that there is a genuine dispute about whether Miller knew Andel was working on the Firth Project and that such knowledge would require Miller to inquire about Andel's insurance status. However, even if we assume Miller did know Andel and his employees were working at the Firth Project, that does not mean Miller conducted a scheme to evade workers' compensation insurance protections. Malone has not asserted, nor do the facts support, that Miller Builders entered into an oral agreement with Andel as a subcontractor. In fact, Andel himself maintained that he communicated only with McCullough and the parties agree that he was paid from McCullough, not Miller. In turn, Malone was Andel's employee. Andel paid Malone an hourly wage and supervised the work completed by Malone at the Firth Project work site. Whether Miller knew that Andel and his employees were working at the Firth Project is not material. Miller Builders fulfilled its duty by requiring its' subcontractor, McCullough Construction, to provide workers' compensation insurance to all of the workers it hired. The evidence demonstrates that Malone was covered by that insurance and obtained benefits. Therefore, Miller Builders cannot be found to be an employer pursuant to § 48-116. The district court did not err in finding that there was no genuine issue of material fact regarding the relationship between Miller Builders and Malone and finding that Miller Builders was not an employer pursuant to § 48-116.

Having found that Miller Builders was not conducting a scheme, artifice, or device in an attempt to evade the requirements of the Workers' Compensation Act, we need not determine whether the provisions of § 48-116 applies to a subcontractor of a subcontractor. We hold that Miller Builders fulfilled its duties by requiring McCullough to provide proof of workers' compensation insurance and, therefore, Miller Builders is not a statutory employer. The district court did not err in granting summary judgment to Miller Builders regarding Malone's first theory of liability.

*Negligence Theory of Liability.*

Malone's second theory of liability posits that Miller Builders had a nondelegable duty to provide a safe work environment and that duty was breached when Miller Builders failed to prevent the accident which caused Malone's injuries. Malone argues that the court erred in finding that Miller Builders did not owe Malone this duty of care. We find no merit to this assignment of error.

In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Rodriguez v. Catholic Health Initiatives*, 297 Neb. 1, 899 N.W.2d 227 (2017). The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.*

Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Eastlick v. Lueder Constr. Co.*, 274 Neb. 467, 741 N.W.2d 628 (2007). Our case law has recognized four exceptions to the general rule. *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014). Specifically, an employer of an independent contractor can be liable for physical harm caused to another if (1) the employer retains control over the contractor's work, (2) the employer is in possession and control of premises, (3) a statute or rule imposes a specific duty on the employer, or (4) the contractor's work involves special risks or dangers. *Id.* The latter three exceptions are often referred to as involving "nondelegable" duties, which means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. *Id.*

The district court found that none of the four exceptions to the general rule are applicable to this case. On appeal, Malone has not specifically assigned or argued that the first three exceptions apply. As such, they will not be addressed in our analysis. Malone focuses his argument on the fourth exception, specifically arguing that the Firth project involved "special or peculiar" risks. Brief for appellant at 15, 22. The district court, without further explanation, held that the fourth exception did not apply to the present case as a matter of law, citing *Gaytan v. Wal-Mart, supra.* Malone interprets this holding to mean that the court found that since he was covered by McCullough Construction's workers' compensation insurance, the merits of whether his work on the project involved "special risks or dangers" was not even addressed. We find no error in the district court's decision.

In *Gaytan*, Wal-Mart contracted with Graham Construction, Inc., to be the general contractor in charge of constructing a new store in Omaha, Nebraska. Graham Construction subcontracted with D&BR Building Systems, Inc., to install the steelwork necessary for the building. An employee of D&BR was on the roof, but was not wearing the required safety equipment. When he walked across a decking sheet that was outside of the area that was deemed safe to walk on, it gave way, causing him to fall and die. Gaytan, as special administrator of the employee's estate, brought an action against Wal-Mart and Graham Construction.

Gaytan asserted that Wal-Mart and Graham Construction had a nondelegable duty arising from the "peculiar risk" associated with the steel construction. The Supreme Court reviewed prior case law related to this issue and addressed whether it should apply § 416 of the Restatement (Second) of Torts to this scenario. That provision reads:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

The Supreme Court, in reviewing how other jurisdictions have applied the principles relating to peculiar risk articulated in § 416 of the Restatement concluded as follows:

The courts adopting the majority view cite various reasons for not applying the principle embodied in § 416 of the Restatement (Second) to claims by injured employees of subcontractors, but most of the rationale stems from the fact that a subcontractor's employees are generally covered by workers' compensation laws. Some courts note that the policy concern underlying § 416, which is to provide a remedy to persons injured as a result of a peculiar risk at a construction site, is already met in the case of a subcontractor's employee covered by workers' compensation. These courts note that the employer of the subcontractor has indirectly funded this remedy because workers' compensation premiums are necessarily included in the contract price. Some courts reason that under agency principles, the subcontractor's release from tort liability to an injured employee by operation of workers' compensation laws operates to release the party of which employed the subcontractor.

*Gaytan v. Wal-Mart*, 289 Neb. at 71, 853 N.W.2d at 200-01. The Court then adopted the majority view, holding that § 416 of the Restatement (Second) of Torts does not apply to personal injury claims by employees of subcontractors against general contractors or owners. As such, the court agreed that as a matter of law, the peculiar risk exception afforded no legal basis for Gaytan's claims against either Graham Construction or Wal-Mart. *Gaytan v. Wal-Mart, supra.*

While the presence of workers' compensation insurance served as the policy background for adopting this holding, nothing in the Supreme Court's opinion requires a general contractor to carry workers' compensation insurance for the holding to be applicable. In fact, the Supreme Court notes that the owner and the general contractor are indirectly funding the remedy provided to the subcontractor's employees in the sense that the cost of the insurance premium paid by the subcontractor for workers' compensation insurance is necessarily included in the contract price. See *id.* All of these factors apply here. Miller Builders required McCullough Construction to provide proof that its employees were covered by workers' compensation insurance. Malone was covered and has been compensated pursuant to the settlement with McCullough Construction in the compensation court case. As such, Miller Builders was not required to carry workers' compensation insurance to be exempt from the peculiar risk liability. Therefore, the district court did not err in finding that the rule enunciated in *Gaytan* prohibited Miller Builders from being held liable under the fourth exception as a matter of law.

Because we have found that none of the exceptions apply, the general rule that one who employs an independent contractor is not liable for physical harm caused to another by acts or omissions of the contractor or his servants dictates that Miller Builders cannot be held liable for Malone's injuries on a negligence theory. The court did not err in finding that there was no genuine

issue of material fact, and that Miller Builders was entitled to summary judgment as a matter of law regarding Malone's negligence theory of liability.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court granting Miller Builders' motion for summary judgment.

AFFIRMED.